Irving Younger, J.
On a day in the middle of June, 1964, there appeared on the streets of New York an elderly, friendless, and confused lady named Cassie McConaghley. So far as we can .tell now, she had hitchhiked here from Seattle, Washington. With no place else to go, she sat in parks for five days and nights. On June 24, 1964, she was received at the Department of Welfare’s Shelter for Homeless Women. There, a psychiatrist examined her and found her to he in a “ schizophrenic reaction, chronic, paranoid type.” He recommended that ‘1 because of her complete lack of insight and judgment, and for her own protection, she should be admitted to Bellevue Psychiatric for further observation.” The Shelter immediately forwarded this report to the Psychiatric Division of Bellevue Hospital, which forthwith admitted her.
Miss McConaghley took with her to Bellevue all of her luggage. It consisted of a shopping bag. Upon undressing her, a nurse discovered in Miss McConaghley’s underclothes the sum of $1,450 in cash. This was taken in custody by the Department of Hospitals.
Bellevue’s psychiatrist described the new patient as 11 under pressure of speech, confused, rambling, anxious, affect inappropriate, judgment and insight, impaired, illogical and irrelevant.” On July 2, 1964, Bellevue prepared a petition asking that Miss McConaghley be declared incompetent and certified to a State mental hospital. Four days later, on July 6, the petition was withdrawn because ‘1 the patient was well enough to be discharged.” On July 7, she was discharged.
*826 Her money was not discharged with her. The Department of Hospitals retained $442 to pay for Miss McConaghley’s ‘ ‘ maintenance and care. ’ ’ She thereupon commenced this action, seeking “ return of money wrongfully withheld ” (indorsed complaint).*
I shall assume, for purposes of this decision, that the .statutes in effect on July 7, 1964, provided that the city was to pay a poor person’s expenses in connection with a question of mental competency, and that a pecunious person was to pay his own expenses.** (Mental Hygiene Law, § 77.) It follows, for purposes of this decision, that the Department of Hospitals was entitled to be paid by Miss McOonaghley for its services to her if she was a pecunious person. The issue, then, is not whether the department should be paid. Bather, the issue is whether it obtained payment from Miss McOonaghley in a lawful manner.
To demonstrate that it did, the city points to General Order No. 681 of the Department of Hospitals, which states:
II Whereas, in law a debtor has the right of offsets of debts * * * it is ordered that
“ 1. Patients in municipal institutions under the jurisdiction of the Department of Hospitals be billed to the extent of their assets at the determined rate;
“2. Patient’s funds on deposit in the Patients’ Account of the Hospital be applicable toward the cost of the patient’s care and maintenance;
“3. If the patient refuses to assign moneys on deposit in the Patients’ Account, the Department of Hospitals shall proceed summarily to sieze [sic] the moneys on deposit to offset the debt incurred for care and treatment ’ ’.
Here, the Department of Hospitals summarily seized the $442 it claimed to be due from Miss McOonaghley, without notice or an opportunity for her to be heard, all in accordance with General Order No. 681. Does General Order No. 681 comport with the due process clause of the Fourteenth Amendment to the Constitution of the United States and of section 6 of article I of the Constitution of the State of New York? It does not.
General Order No. 681 permits the Department of Hospitals, by itself, and without notice or hearing to the patient, to deter *827 mine whether the patient is pecunious; if it determines that he is, again without notice or hearing, the department determines the amount the patient should pay; and finally, still without notice or hearing, the department helps itself to that amount out of any money the patient has deposited with it. Should the patient wish to contest the determination that he is pecunious or to challenge the adequacy, necessity, or value of the services rendered him, he must sue to recover his money from the department.
This is the procedure authorized by the State of Wisconsin in its garnishment statute — deprivation of a debtor’s property without prior notice or hearing, leaving to a later trial determination of the validity and amount of the underlying debt. Wisconsin’s garnishment statute was held unconstitutional one month ago by the Supreme Court. Sniadach v. Family Finance Corp. (395 U. S. 337, 342): “ Where the taking of one’s property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing * * * this prejudgment garnishment procedure violates the fundamental principles of due process.”
Since General Order No. 681 of the Department of Hospitals is no different, we declare it void for want of due process, and direct judgment in favor of plaintiff against defendant in the sum of $442, together with costs and interest from July 7, 1964.***

 Miss McConaghley’s notice of claim against the city was timely filed. However, it stated that she had been aggrieved by an involuntary commitment, not by a wrongful taking of her money. The city did not allege this flaw as a defense to the complaint, nor has it been prejudiced in any way. I therefore deem the notice of claim amended to conform to the pleadings and the proof. (General Municipal Law, § 50-e, subd. 6.)

 The draftsmanship of the statutes leaves the matter in some doubt.

 The city has asserted no counterclaim for the value of the services rendered to Miss MeConaghley. Hence, even if warranted, we can make no allowance for those services.