**Mitchell EPPS, Paul and Ellen Parham, and Rosa Bell Andrews Washington, on behalf of themselves and all others similarly situated**

v.

**Americo V. CORTESE, Esquire, et al.**

**Civ. A. No. 70-2592.**

United States District Court,
E. D. Pennsylvania.

March 31, 1971.

Probable Jurisdiction Noted
May 24, 1971.
See 91 S.Ct. 2185.

"substantial justice to the cause of action. * * *"

Joel Weisberg, Community Legal Serv., Philadelphia, Pa., for plaintiffs.

Levy Anderson, City Sol., Philadelphia, Pa., for Americo V. Cortese and William M. Lennox.

William Bayer, Philadelphia, Pa., for Government Employees Exchange Corp.

Robert F. Maxwell, Philadelphia, Pa., for Sears, Roebuck and Co.

Before GANEY, Circuit Judge, and TROUTMAN and HANNUM, District Judges.

TROUTMAN, District Judge.

Plaintiffs challenge the constitutionality of those Pennsylvania statutes and rules of civil procedure which provide for the civil action of replevin with bond. Act of 1705, 1 Sm. L. 44, § 12, 12 P.S. § 1821, and April 19, 1901, P.L. 88, as amended, 12 P.S. §§ 1824–1845; Pennsylvania Rules of Civil Procedure 1071–1087.[1]

Plaintiffs seek a permanent injunction restraining the defendant Cortese, Prothonotary of the Courts of Philadelphia County, and the defendant Lennox, Sheriff of Philadelphia County, from issuing

1. The Pennsylvania statutes and rules of civil procedure relating to replevin with- out bond are not in question and are not challenged.

and executing upon any and all writs of replevin with bond. Since the complaint places in issue the constitutionality of statutes and rules of state-wide application, this statutory three-judge court has been convened pursuant to the provisions of 28 U.S.C. §§ 2281–2284.

The individual plaintiffs are citizens and residents of Philadelphia, Pennsylvania, from whom goods or chattels have been seized pursuant to writs of replevin with bond duly issued and executed respectively by the Prothonotary and Sheriff of Philadelphia County. The corporate defendants, Government Employees Exchange Corporation, and Sears, Roebuck & Company, are creditors who caused two of the writs in question to be issued. The remaining defendant, Lewis Washington, is an individual Pennsylvania resident.

The matter is presently before the Court upon a stipulated record as if on final hearing by agreement of counsel. Presently before the Court for disposition are cross-motions for summary judgment. The facts as stipulated to and agreed upon by and among the parties [2] are as follows:

1. Writs of replevin with bond have been issued by defendant Cortese or his agents and executed upon by defendant Lennox or his agents against the following named plaintiffs in the Court of Common Pleas of Philadelphia County:

(a) Mitchell Epps, August Term 1970, No. 4082;

(b) Paul Parham, September Term 1970, No. 737;

(c) Rosa Bell Andrews Washington, September Term 1970, No. 1154.

2. Writs of replevin with bond have been issued by the Prothonotary of Philadelphia County or his agents and executed upon by the Sheriff of Philadelphia County or his agents, against numerous other individual residents of the Commonwealth of Pennsylvania since 1705.

3. Under the statutes and rules regulating the issuance of writs of replevin with bond, the Prothonotary and Sheriff are required to issue and execute the writs upon the presentation by any claimant of the requisite documents in accordance with the Acts of Assembly and the Pennsylvania Rules of Civil Procedure applicable to such cases.

4. To obtain a writ of replevin with bond, the party seeking such a writ need file with the Prothonotary or his agents the following documents:

(a) An entry of appearance;

(b) A praecipe for a writ of replevin with bond;

(c) An affidavit of the value of the property to be replevied; and

(d) A bond in double the value of the property.

5. The Prothonotary or his agents do not and are not authorized to request from the party seeking replevin with bond any information concerning their alleged justification for demand in the execution of a writ.

6. Neither the Prothonotary nor the Sheriff are required, under the Replevin With Bond Acts and rules, to give notice of any kind to the defendant named in the writ other than service of the writ itself.

7. The Sheriff, or his agents, upon the issuance of a writ of replevin with bond by the Prothonotary, or his agents, is required to execute upon the writ forthwith.

8. The Sheriff, or his agents, when executing upon a writ of replevin with bond, is required to enter the home of the defendant on the writ and to seize with or without consent of the defendant any and all of the property named in the writ.

2. There has been no stipulation as to defendant Washington. However, his uncontradicted testimony establishes that the property replevied, consisting of a bed, lamp, bicycle and other items, was owned by him and used by his son, of whom he had custody following divorce proceedings and separation from his wife. (See transcript of proceedings on September 25, 1970.) He recovered only that which was his for use by his son living with him.

9. Neither the Replevin With Bond Act nor the rules expressly set forth that the Sheriff, pursuant to the writ with bond, may forcibly break and enter or that he may not break or enter.

10. In none of the individual cases did the Sheriff forcibly break and enter into the premises of plaintiffs.

11. Neither the Sheriff nor his agents have any discretion in determining the underlying transaction giving rise to the replevin with bond action. They are not required or permitted to hear or determine any issues of the rights of either of the parties to the property in question.

12. The Sheriff, or his agents, after seizing and taking possession of the property named in the writ, must hold it in his custody for a period of seventy-two hours, during which time the defendant named on the writ may regain possession of the property by filing a counter-bond in the same amount as the original bond.

13. The form of the writ required by Pennsylvania Rules of Civil Procedure, Rule 1354, contains no notice to the defendant that he may recover the property by posting a counter-bond, nor does it expressly prohibit this notice.

14. If the defendant on the writ fails to file the counter-bond within the seventy-two hour period, the Sheriff, or his agents, is required to deliver the property seized to the plaintiff on the writ, subject to Rule 1079 dealing with impounding.

15. The plaintiff, Epps, and the defendant, Government Employees Exchange Corporation, are the parties to a contract entitled "Retail Installment Contract—Security Agreement" which provides, inter alia, the following:

"You or assigns shall retain title to said merchandise; I will be responsible for its loss or damage; I will not remove or encumber same; if I default in any payment or breach any covenant herein, the entire balance shall be immediately due and payable and you or assigns may retake the merchandise, sell the same and hold me for any deficiency, or affirm the sale and hold me liable for the unpaid balance * * * Notice to buyer:

1. Do not sign this contract before you read it or if it contains any blank spaces."

16. The property named in the writ to be replevied from plaintiff Epps consisted of one G. E. stereo, two wedding rings, a diamond watch and band and a T.V. roof antenna.

17. Plaintiff Epps, at the time of the institution of the replevin action, earned in excess of $10,000 per year.

18. On February 1, 1969, the plaintiff, Paul Parham, and the defendant, Sears, Roebuck and Co., entered into a similar retail credit contract also providing that the seller retain title in the goods sold and that upon default the seller may at his option repossess the goods. The plaintiff, Ellen Parham, was not a party to the contract.

19. A Harmony House table and four stools and a divan bed were delivered to the plaintiff, Paul Parham, and possession was retained by him in his home until the goods were replevied by the Sheriff of Philadelphia County.

20. The agreements entered into by plaintiffs Epps and Parham comply with the provisions of the Uniform Commercial Code of Pennsylvania and the Goods and Services Installment Sales Act.

21. The payment record of the plaintiff, Paul Parham, shows that there were defaults on his part as to the agreement of February 1, 1969.

22. There were nine (9) telephone calls made by the defendant, Sears, or its representatives, to Mr. Parham and five (5) written communications were also sent. The dates on which such written communications were sent are respectively: May 16, 1970, May 22, 1970, June 22, 1970, July 22, 1970, and August 19, 1970. There were also two (2) personal visits to the home of the plaintiff. All of these telephone calls, letters and visits concerned the problem of the account and its status.

23. On September 11, 1970, a Writ of Replevin With Bond was issued by the Prothonotary of Philadelphia County on behalf of the defendant, Sears, Roebuck and Co., upon the filing by it with the Prothonotary of a bond as required by the Replevin Statutes and Rules, an entry of appearance by the attorney acting for Sears, Roebuck and Co., and a praecipe for the issuance of the writ. There was also filed with the Prothonotary an affidavit stating that the value of the property was $250.00. A bond in the amount of twice the value of the property was also filed.

24. On September 15, 1970, the goods were removed from the home by the office of the Sheriff of Philadelphia County in accordance with the command of the writ. At that time, the original writ was exhibited to the plaintiff's wife, Ellen Parham, and a copy of the said writ was left with her. There was no violence, no breaking and entering, and Ellen Parham admitted the Sheriff to the house for the purpose of executing the replevin in accordance with the mandate of the writ.

25. The defendant, Sears, Roebuck and Co., has not filed a complaint in the replevin action and the plaintiff, Paul Parham, has not requested it to do so, which he would have a right to do under the Replevin Rules and Statutes.

## I.

## JURISDICTION

The jurisdiction of this Court is invoked under 28 U.S.C. § 1343, 42 U.S.C. § 1983, 28 U.S.C. §§ 2281–2284, and 28 U.S.C. §§ 2201–2202 seeking to redress alleged deprivations, under color of state law, of rights, privileges and immunities secured by the Federal Constitution. More particularly, plaintiffs complain that the Pennsylvania statutes and rules relating to replevin with bond are unconstitutional on their face in that they:

1. Authorize prejudgment seizure of goods or chattels without notice and prior to any judicial determination in violation of the due process clause of the Fourteenth Amendment;

2. Subject plaintiffs to unreasonable searches and seizures without a warrant in violation of the prohibitions of the Fourth Amendment, and

3. Require the posting of a counterbond in twice the amount of the property replevied which has the effect of denying low-income individuals access to the courts and, therefore, equal protection of the laws.

A careful reading of the allegations in the plaintiffs' complaint indicates that substantial constitutional issues are raised. It is contended, however, that plaintiffs' claims are not cognizable under 28 U.S.C. § 1343(3) because they are all "dependent for their existence upon the infringement of property rights". Hauge v. C. I. O., 307 U.S. 496, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (1939) (Stone, J., concurring); Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969); see also National Land & Investment Co. v. Specter, 428 F.2d 91, 98–100 (3rd Cir. 1970) (*dictum*); Lynch v. Household Finance Corp., 318 F.Supp. 1111 (D. Conn.1970). But see Joe Louis Milk Co. v. Hershey, 243 F.Supp. 351, 354 (N.D. Ill.1965); Note, The Proper Scope of the Civil Rights Acts, 66 Harv.L.Rev. 1285 (1953). At least one of the plaintiffs' claims, namely, the right to be free from unreasonable searches and seizures, has been held to be squarely within the purview of the Civil Rights Act. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1960). Plaintiffs' allegations in this respect would be sufficient to confer jurisdiction under the Civil Rights Act, as there is no question that the Sheriff or his deputies here act under color of State law in executing the writs. See Monroe v. Pape, *supra*. We need not be concerned with an evaluation of the advantages or disadvantages of a broad or narrow construction of Justice Stone's *Hague* formulation at this point since there is alleged in this complaint a valid basis for Federal jurisdiction. As we view the remaining allegations, apart from the Fourth Amendment, they state,

as alleged, grounds in some respects similar to those recently ruled upon by the Supreme Court. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). See also Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970) and Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970).

## II.

### CLASS ACTION

Plaintiffs, pursuant to Fed.R.Civ.P. 23, seek to have this action maintained as a class action. They seek to define the class as all residents of the Commonwealth of Pennsylvania who are or may be subject to the issuance of writs of replevin with bond. Since plaintiffs have narrowly delimited the thrust of their argument so as to only challenge the constitutionality of the Pennsylvania statutes and rules on their face and not as applied, we find it unnecessary to make a determination of the class. If the Court were to give plaintiffs the relief they request and ultimately rule that the statutes and rules in question are unconstitutional on their face, such a ruling would, in any event, determine the validity of the statute as it applies to all Pennsylvania residents. We, therefore, need not and do not indulge in an unnecessary analysis of the arguments and authorities cited on this issue, but shall turn to the merits of the case.

## III.

### CONSTITUTIONALITY

■ Undoubtedly, plaintiffs here challenged a remedy of ancient origin, indeed one of the earliest remedies known to the common law. J. Cobbey, A Practical Treatise on the Law of Replevin § 1, at 1 (2d Ed. 1900). The action of replevin is designed to permit one having the right to possession to recover property *in specie* from one who has either wrongfully taken or detained the property in question. At early common law a form of replevin with bond was considered to be a tenant's sole remedy against a landlord who had wrongfully distrained his goods.[3]

The Pennsylvania Replevin statute, 12 P.S. § 1821, permits writs of replevin in "all cases whatsoever, where replevin may be granted by the laws of England"; however, the procedural aspects which are the subject of challenge here have subsequently been established in Pennsylvania Rules of Civil Procedure 1071–1087.[4]

Under the Pennsylvania practice, the action with bond is commenced by the filing of a praecipe for a writ of replevin accompanied by an affidavit stating plaintiff's determination of the value of the property and a bond in double that value.[5] Pa.R.Civ.P. 1073(a). A complaint is not required to be filed. The Sheriff is required to serve the writ describing the property upon the defendant and any person found in possession of the property and is required to take possession of the property described, Pa.R. Civ.P. 1074, unless the plaintiff on the writ permits the property to remain in the hands of the defendant. Pa.R.Civ.P. 1073. The Sheriff is required to hold the property for a period of seventy-two hours within which time the defendant may regain possession by filing a counter-bond with the Prothonotary in the same amount as the original bond. Pa. R.Civ.P. 1076. When a plaintiff petitions the Court during the pendency of the action stating either that the property cannot be located or has been concealed or removed, the Court may order the defendant examined as to the where-

---

3. The common-law procedure has recently been detailed by a member of our Court in Santiago v. McElroy, *supra*, at n. 5.

4. See Pa.R.Civ.P. 1456.

5. Plaintiffs' determination of the value of the property is not binding on the defendant. Gaspero v. Gentile, 160 Pa. Super. 276, 50 A.2d 754 (1947).

abouts of the property and may order that the property be delivered to the Sheriff. Pa.R.Civ.P. 1081. Where no counter-bond is filed, the Sheriff delivers the property to the plaintiff on the writ. A party who asserts a right to the property by his action and who fails to maintain his right to possession is required to pay the party entitled thereto the value of the property in addition to all legal costs, and fees *and* all damages sustained by reason of the issuance of the writ. Pa.R.Civ.P. 1073(a) (2).

Plaintiffs, in their primary constitutional attack, contend that the above cited scheme of statutes and rules, on its face, operates to deprive them of their property without due process of law. In so arguing plaintiffs place great reliance upon the Supreme Court's two recent decisions in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Admittedly, there are broad and general procedural similarities between those cases and the instant case; however, both have centrally distinguishing and compelling facts which make them inapposite to the case before this Court. In *Sniadach* the Supreme Court held that the Wisconsin prejudgment wage garnishment procedure violated fundamental principles of due process. The Court was understandably concerned with the compelling circumstances that an individual's wages were, without notice, indefinitely "frozen" pending the outcome of extended litigation. The Court emphasized the unique characteristic of wages as a *"specialized type of property presenting distinct problems in our economic system"*. (Emphasis added) 395 U.S. at 340, 89 S.Ct. at 1822. To refer to wages as a "specialized type of property" is to understate the differences between wages and *all other types of property*. To refer to wages as "presenting distinct problems in our economic system" is to again understate the wholly unique problems incident to the seizure of wages as opposed to all *other types of property*. That was, for the purposes of *Sniadach*, a sufficient reference. It is obvious that wages are more than mere property. They are the means or medium by and through which the necessities of life are purchased. To deny the prejudgment attachment of the medium or means of exchange is fundamental to the orderly workings of the economics of a complex society. Wages belong to the wage earner until they are pledged or committed to another. Because they are used in so many different ways and *because they have no practical substitute,* they should not and must not become the subject of prejudgment attachment without notice by a collateral creditor.

Because wages have no substitute and because they are each day used to obtain and meet the needs of that day they are quite unlike the property here involved —stereo sets, rings, diamond watches, tables, stools and beds. The debtor can temporarily live without such property while its *owner* seeks its return in kind. In *Sniadach*, the creditor sought property to which he had no title and which, because of its unique character, was an irreplaceable necessity to the debtor. In contrast, the creditor here seeks specifically identifiable property to which he has reserved title and which he now seeks in order to prevent its loss, concealment or destruction. To eliminate a summary remedy which permits immediate repossession of secured property may well limit an aggrieved creditor to a worthless judgment with the attendant legal expense of obtaining it. *Sniadach* involved a seizure grounded in a collateral claim on a promissory note where the creditor utilizing the garnishment procedure had no colorable interest whatsoever in the debtor's wages nor any interest in protecting or preserving his own property. The situation in *Sniadach*, therefore, is readily distinguishable both factually and in principle from a replevin with bond action where a purchase money creditor is seeking, by way of legal process, to protect a validly created security interest in specific and identifiable property.

Goldberg v. Kelly, *supra*, is also inapposite. Like *Sniadach*, compelling circumstances were paramount in the Court's analysis. "Welfare benefits" there were the equivalent of the "wages" earned in the *Sniadach* case. The "benefits" were "money" in the hands of the recipient, the medium of exchange through which to obtain the day's needs. That it was "welfare" rather than "wages" is legally insignificant. The prehearing termination of welfare benefits deprived ostensibly eligible recipients of the very means by which to live for an indeterminate period of time. The governmental interest in preserving the uninterrupted receipt of welfare, considering the "brutal need" and destitute circumstances of the ostensibly eligible welfare recipients clearly outweighed countervailing fiscal and administrative considerations. Both *Sniadach and Goldberg, supra*, must be understood in light of the particular facts before the Court and should not be read so as to automatically declare all provisional remedies regarding seizure of property unconstitutional regardless of the circumstances of the particular case.[6] See *e. g.* Brunswick Corp. v. J. & P. Inc., 424 F.2d 100 (10th Cir. 1970).

■ The term "due process of law" has been subject to varied interpretations and applications, but at the very least, it implies a process of weighing and balancing the various interests of the State and individuals in judging whether a particular procedural scheme or process satisfies rudimentary principles of fairness. Its application is not mechanical or a matter of formula, but rather is a process of "adjustment". Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 162, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring); Cafeteria and Restaurant Workers, etc. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1960); Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938 (1922); Federal Communications Comm. v. W. J. R., etc., 337 U.S. 265, 275, 69 S.Ct. 1097, 93 L. Ed. 1353 (1949); Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 15 L.Ed. 372 (1856).

In the instant case, based upon the facts as stipulated, we find no irreparable harm or unconscionable hardships akin to those suffered in *Sniadach, Goldberg* and the related cases cited by plaintiffs. Replevin with bond as prescribed by the Pennsylvania procedures and pursuant to a conditional sales contract authorizing repossession to protect a title or a valid security interest in our opinion is a situation in which prejudgment seizure of goods without a prior hearing is justified when followed by certain remedies and safeguards here involved. The plaintiffs have not shown that they suffered "grievous loss" of any kind by reason of the temporary dispossession suffered here.[7] There is no finality accorded to the initial taking by the Sheriff here, nor is there the type of permanent stigma and disgrace which compelled the Supreme Court's decision most recently in Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

---

6. A number of cases cited by plaintiffs are inapposite for the reasons set forth above. See *e. g.*, Goliday v. Robinson, 305 F.Supp. 1224 (N.D.Ill.1969) (Termination of *public assistance grants*); McCallop v. Carberry, 1 Cal.3d 903, 83 Cal.Rptr. 666, 464 P.2d 122 (1970) (prejudgment *wage* attachment); Jones Press, Inc. v. Motor Travel Services, Inc., 286 Minn. 205, 176 N.W.2d 87 (1970) (prejudgment garnishment of accounts receivable); Larson v. Fetherston, 44 Wis.2d 712, 172 N.W.2d 20 (1969) (prejudgment garnishment of bank accounts);

Mills v. Bartlett, 265 A.2d 39 (Del.Super. 1970) (prejudgment foreign wage attachment); McConaghley v. New York, 60 Misc.2d 825, 304 N.Y.S.2d 136 (N.Y. County Civ.Ct.1969) (retention of monies covering hospital expenses prior to determination of whether patient was impecunious).

7. The property involved in this suit is clearly the garden variety kind of property and does not constitute the "specialized" kinds of property contemplated by the *Sniadach* and *Goldberg* cases.

■ Plaintiffs, in arguing that the Pennsylvania procedure, on its face, violates due process, suggest that in *every* provisional remedy, there must be an evidentiary hearing prior to any seizure of property. However, one of the "fundamental requisites of due process of law is the *opportunity* to be heard" (Emphasis added). Goldberg v. Kelly, 397 U.S. at 267, 90 S.Ct. at 1020; Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). Due process does not necessarily require a pre-seizure hearing in all cases, but rather demands that there be a *reasonable opportunity* to be heard and present defenses at some meaningful time and in some meaningful manner. See Coffin Bros. & Co. v. Bennett, 277 U.S. 29, 31, 48 S.Ct. 422, 72 L.Ed. 768 (1927); Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 596–597, 51 S.Ct. 608, 75 L.Ed. 1289 (1930); Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 15 L.Ed. 372 (1856); Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). "Due process requires that there be an opportunity to present every available defense; but it need not be before the entry of judgment". American Surety Co. v. Baldwin, 287 U.S. 156, 168, 53 S.Ct. 98, 102, 77 L.Ed. 231 (1932).

Under the Pennsylvania replevin with bond procedure the Sheriff, by service of the writ itself, gives the defendant named on the writ actual notice of the pendency of another's claim to a possessory interest in the specific property involved. After the property is taken, each defendant named on the writ is not automatically and forever dispossessed, nor is his adversary's right to possesssion or title then determined. The property is not forthwith delivered to the plaintiff on the writ. The Pennsylvania procedure is specifically designed so that the defendant, served with the writ, may within a seventy-two hour period [8] regain possession by filing a counter-bond equivalent to the bond obtained by the

party initiating the action. Pa.R.Civ.P. 1076. Upon the filing of a counter-bond, the Sheriff is required to return the property to its original possessor pending a hearing to determine the plaintiff's right to title or possession. Adequate safeguards are built into the Pennsylvania procedure to avoid misuse or abuse of process. Rule 1073(a)(2) specifically provides that "if the plaintiff fails to maintain his right to possession * * * he *shall pay* to the party entitled thereto the *value of the property and all legal costs, fees and damages sustained by reason of the issuance of the writ."* Thus, the debtor is made whole including damages for deprivation of the possession of the *unspecialized* property here involved.

■ It is apparent from the foregoing that Pennsylvania's procedure for replevin with bond provides the immediate opportunity to repossess the property taken. Thereafter, it is incumbent upon the original moving party to establish his superior right at a hearing at a subsequent time, failing which, the liabilities, including damages, attach as provided in the Pennsylvania rules. We cannot say that this procedure on its face is fundamentally unfair.

The State and creditor interests adverted to in *Sniadach, supra,* are present in this case. Clearly, the State has a countervailing interest in summary seizure by replevin which is to be weighed against plaintiffs' right not to be temporarily deprived of their property prior to a hearing on the merits. Initially, summary seizure conserves State financial resources and administrative time in reducing the number of evidentiary hearings in a given lawsuit. Additionally, the State and creditor interests coincide in providing a protective remedy for those who have retained title to or security interest in specific and unspecialized property by authorizing procedures designed to prevent destruction, misuse or concealment of property by the debtor

8. Upon application to the Court, the time for filing a counter-bond may be extended by the Court for cause shown. Pa. R.Civ.P. 1076(a).

pending final disposition. Adequate remedies made available to creditor interests are necessary to the preservation and continuation of retail credit upon which vast numbers of people must necessarily rely in a constantly inflated economy. To deny the creditor an adequate and practical remedy may deny the debtor of his only means of obtaining many widely accepted, but costly, items, the enjoyment of which should not be reserved to the wealthy. The preservation of adequate remedies is also necessary to the maintenance of many large and small retail businesses without which our economy might well substantially decline to the detriment of the very individuals whom plaintiffs here seek to protect.[9]

We have based our determination solely on the face of the statutes and rules in question and in light of the present record. Plaintiffs have failed to demonstrate on this record the fundamental unfairness of the Pennsylvania statutes and rules *per se* on due process grounds. We have not been asked to and do not consider the constitutionality of this procedure as it may be applied, used or misused in hypothetical circumstances of undue hardship not presently before the Court. We recognize the importance of not imposing procedural requirements upon the State other than those demanded by the rudimentary concepts of due process. Goldberg v. Kelly, 397 U.S. at 267, 90 S.Ct. 1011. We hesitate to make such an imposition considering the presumption of constitutionality which clothes the Pennsylvania procedures involved on the present record.

Plaintiffs rely heavily upon LaPrease v. Raymours Furniture Co., 315 F.Supp.

716 (N.D.N.Y. July 29, 1970). The provisions of the statute there being considered and the record before the Court may well distinguish it from the instant case. The statutory scheme in *LaPrease* did not provide, as does the one before us, remedies to make the debtor completely whole by the award of all costs, damages and fees. Additionally, the New York statute provided that the Sheriff *shall forcibly* enter. Pennsylvania's rules do not so provide; moreover, forcible entry was threatened in *LaPrease* whereas on our record there clearly was no forcible entry or threat thereof. Furthermore, in *LaPrease* the debtor alleged a meritorious defense and default was specifically denied. Interestingly, the *LaPrease* court distinguished the *Brunswick* case on the theory that a default had been admitted in *Brunswick*, but denied in *LaPrease*. Thus, the instant case, where default is not denied, is closer to *Brunswick* and on the theory advanced by the *LaPrease* court, we might well follow *Brunswick*. However, we need not and do not follow the theories of the *LaPrease* court. There may well be sufficient differences in the statutory procedures from those here involved. If not, we do not hesitate to state that we are in disagreement with *LaPrease* mainly due to what we consider to be misplaced reliance on the *Sniadach* and *Goldberg* cases. We find ourselves in agreement with the analysis in Fuentes v. Faircloth, 317 F.Supp. 954 (S.D.Fla.1970)[10] and Brunswick Corp. v. J. & P. Inc., 424 F.2d 100 (10th Cir. 1970)[11].

Aside from their principal contention regarding due process, plaintiffs additionally argue that the Pennsylvania replevin with bond procedures deprive low-

---

9. We can conceive situations where replevin may be employed to prevent spoilage of perishable goods wrongfully possessed where absent a summary seizure such goods would be lost. Undoubtedly, there may be many other circumstances where immediate action is necessary.

10. We note that the Supreme Court has recently granted review of the *Fuentes* decision. See 401 U.S. 906, 91 S.Ct. 893,

27 L.Ed.2d 804 (review granted Feb. 22, 1971.)

11. An additional problem raised in both *Fuentes* and *Brunswick, supra,* is whether plaintiffs by reason of their contracts have waived their rights. We have not been presented with evidence or arguments on this point and, therefore, do not reach this issue.

income individuals of equal protection of the laws and that the statutes and rules violate plaintiffs' right to be free from unreasonable searches and seizures. We are not convinced or persuaded by plaintiffs' arguments on these points.

With respect to the equal protection argument, there is no need for a lengthy analysis based upon the record before the Court. Plaintiffs have *alleged* generally that they are in poverty straits. Such allegations, if proved, might merit a more detailed consideration of the equal protection arguments. However, such allegations have not been proved— indeed the only specific evidence in the present record of the financial background of any of plaintiffs is that plaintiff Epps earns in excess of $10,000 per year. Other than this, the record is silent. We are not presented with particularized evidence upon which we can make an intelligent judgment on this issue. See *e.g.* the evidence presented in Swarb v. Lennox, 314 F.Supp. 1091, 1097 (E.D.Pa.1970) and Santiago v. McElroy, 319 F.Supp. 284, 291 (E.D.Pa.1970). Based upon the present record and absent such proof, we shall not engage in deciding hypothetical constitutional questions not placed before the Court in a concrete factual manner.

Plaintiffs' remaining contention generally stated is that based upon a broad reading of Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L. Ed.2d 930 (1967) and See v. City of Seattle, 387 U.S. 541, 547, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), Pennsylvania's replevin with bond procedures have authorized searches and seizures in violation of the Fourth Amendment. Assuming *arguendo* that the search and seizure provisions of the Fourth Amendment

have not been waived by reason of the conditional sales contracts signed by plaintiffs in this case,[12] and further assuming that the proscriptions of the Fourth Amendment apply to summary civil process to satisfy debt,[13] we cannot find a violation upon the facts presented. In all the stipulated facts plaintiffs concede that each seizure, pursuant to a writ of replevin, was conducted in a peaceable manner. There were no threats or intimidation nor is there any evidence of a forcible entry. Pennsylvania's statutes and rules do not specifically authorize the use of force. The conduct herein complained of clearly "does not descend to the level of unreasonableness" which is the standard of the Fourth Amendment. See Wyman v. James, 400 U.S. 309, 315, 91 S.Ct. 381, 384, 27 L.Ed.2d 408 (1971). See also Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). There is nothing in the instant record to indicate that the seizures were other than purely civil in nature, seeking property covered by lawfully created security interests. There is no suggestion that the seizures were made at unreasonable hours or in a forceful or reprehensible manner. These proceedings clearly are not quasi criminal in nature nor are they in aid of any criminal proceeding. On the basis of the facts before us, we are not convinced of the applicability of the Fourth Amendment to the proceedings here in issue nor, assuming it does apply, are we satisfied that the seizures were unreasonable. Therefore, we shall deny plaintiffs' motions for summary judgment and shall grant defendants' motions for summary judgment.

12. But see Fuentes v. Faircloth, 317 F. Supp. 954, 956 (S.D.Fla.1970). See Note 10, *infra*.

13. But see Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 285, 59 U.S. 272, 285, 15 L.Ed. 372 (1856); *Fuentes, supra*, 317 F.Supp. at 954.