**Delia GONZALEZ et al., Plaintiffs-Appellants,**

v.

**COUNTY OF HIDALGO, TEXAS, and Weslaco Labor Camp et al., Defendants-Appellees.**

No. 72-1648.

United States Court of Appeals, Fifth Circuit.

Dec. 26, 1973.

George P. Powell, Pharr, Tex., Robert H. Kern, III, Alice, Tex., for plaintiffs-appellants.

Travis Heister, Edinburg, Tex., for defendants-appellees.

Before BROWN, Chief Judge, MOORE * and RONEY, Circuit Judges.

MOORE, Senior Circuit Judge:

Delia Gonzalez appeals from the dismissal of an action brought on behalf of herself and three infant children in which she sought injunctive relief and damages based on a claim that appellees deprived her of the constitutional right to due process of law. In her complaint Mrs. Gonzalez alleged that she was denied due process when defendant-appellee landlord, the Housing Authority of Hidalgo County, Texas, ("the housing authority"), seized without notice or hearing, for nonpayment of rent, all her belongings from the ·dwelling she was renting. The district court for the

Southern District of Texas held that Mrs. Gonzalez had not been denied her constitutional rights and dismissed the complaint. We reverse and remand the case to the district court for the reasons discussed below.

We emphasize at the outset and throughout the opinion that we are not dealing with the validity of such clauses in private contracts between private parties. Rather we deal with admitted state action—the form of a contract executed by an arm of the State of Texas.

The facts, briefly summarized, are these. Plaintiff-appellant Delia Gonzalez, twenty years old and the mother of three at the time she commenced this action, was made a party to a lease contract in June of 1970 when her husband, Baldemar Gonzalez, a Mexican migrant farm laborer, executed a lease for housing in the Weslaco Labor Camp, a labor camp for migrant workers operated by appellee housing authority pursuant to Vernon's Ann. Texas Revised Civil Statutes Article 1269k § 23a.[1] The tenth clause of the form lease signed by Gonzalez provided as follows:

> The tenant further agrees that the landlord shall have a lien for the payment of rent and all other obligations arising under this lease, upon all goods, chattels, fixtures and personal property of the tenant, which are or may be put on the leased premises, and on default of payment of any such obligations by the tenant, the landlord is hereby authorized to enter upon the premises and remove all and sell said goods, chattels, fixtures and personal property either at a public or private sale, *without notice*, and to apply the proceeds of such sale to the expense of foreclosure of this lien and the said unpaid obligations of the occupant, the balance, if any, of such proceeds, is to be paid to the tenant. [emphasis added]

---

* Hon. Leonard P. Moore, Senior Circuit Judge of the Second Circuit, sitting by designation.

1. For purposes of this decision we assume that the acts here complained of constituted state action within the meaning of the Fourteenth Amendment.

Appellant and her husband and children lived at the Weslaco Labor Camp until October of 1970, at which time they locked up their apartment and migrated north to search for farm work, leaving behind certain items of furniture, household goods, and clothing.[2] Neither appellant nor her husband informed the housing authority that they were leaving, or for how long. When they left, they owed rent for the month of October. The husband returned in December to pay the October rent, then went back up north to continue working. In January of 1971 appellant and her three children were abandoned by the husband in Illinois. In February she returned to the Weslaco Labor Camp to find that the housing authority had entered her premises and, pursuant to Clause 10 of the lease, had removed all her belongings for the non-payment of rent. In April she requested that her property be returned; she was informed that she would have to pay all the rent owing before the property would be returned. In May she was able to pay $20 of the amount owing. She still owes $105. On September 8, 1971, she instituted suit to recover her property, at which occurrence the housing authority returned certain of her belongings. Federal court jurisdiction was based on 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

On January 3, 1972, by Memorandum Opinion, the district court denied all relief and dismissed the action, holding that the contract was valid under Texas law and exempt from the restrictive provisions of the Texas Landlord Lien Law, Vernon's Ann.Texas Revised Civil Statutes Article 5238a,[3] and that the sum-

---

2. Left behind were a cooking stove, a refrigerator, a used lawn mower, a broken couch, two chairs, a dresser mirror, two beds and mattresses, a chest of drawers, a tub full of clothing, a bedspread, a small round table, an electric clock, and a child's play horse.

3. We declared this statute unconstitutional on November 2, 1972, in Hall v. Garson, 468 F.2d 845 (5th Cir. 1972). Since the "restrictive provisions" exempting certain personal property from landlord's liens (§ 3 following) were in effect at the time of the district court opinion, relevant parts of Article 5238a are reproduced here.

Section 1. The operator of any residential house, apartment, duplex or other single or multi-family dwelling, shall have a lien upon all baggage and all other property found within the tenant's dwelling for all rents due and unpaid by the tenant thereof; and said operator shall have the right to take and retain possession of such baggage and other property until the amount of such unpaid rent is paid. * * *

Sec. 3. Notwithstanding any provisions to the contrary * * * there shall be exempt from the lien set out in Section 1 of this Act, the following : * * *

(1) one automobile and one truck, (2) family library and all family portraits and pictures, (3) household furniture to the extent of one couch, two living room chairs, dining table and chairs, all beds and bedding, and all kitchen furniture and utensils, * * *.

Sec. 5. Nothing contained herein shall prejudice any contractual agreements entered into by lessors and lessees concerning the subject matter of this article.

The district court ruled that, even though § 3, *supra*, which reflects the public policy of the State of Texas to protect certain items of property from landlords' liens, did cover Mrs. Gonzalez' seized property, the protection thereby afforded was vitiated by the operation of § 5, *supra*. We are not persuaded that the salutary public policy set out in § 3 was designed to be so easily circumvented as in a lease agreement where the parties do not deal at arms' length. As the three-judge court in Laprease v. Raymours Furniture Co., Inc., 315 F.Supp. 716, 722–723 (N.D.N.Y.1970), cited in Fuentes v. Shevin, 407 U.S. 67, 72 n. 5, 92 S.Ct. 1983, 32 L.Ed.2d 556, reh. denied, 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972) correctly observed :

Beds, stoves, mattresses, dishes, tables and other necessaries for ordinary day-to-day living are, like wages in *Sniadach* [Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349], a "specialized type of property presenting distinct problems in our economic system," the taking of which on the unilateral command of an adverse party "may impose tremendous hardships" on purchasers of these essentials. * * *

Lack of refrigeration, cooking facilities and beds create hardships, it would seem, equally as severe as the temporary withholding of ½ of Sniadach's pay, and measured by *Sniadach*, the hardships imposed cannot be considered *de minimus*.

mary seizure of appellant's property and its detention did not deprive Mrs. Gonzalez of her constitutional right to due process since her husband, by virtue of Clause 10 of the lease, had "knowingly waived by contract any pre-seizure notice." In so ruling the court stated:

> Judicial notice has been taken that form leases are put before tenants on an "accept this or get nothing" basis, and that needy tenants are compelled to sign without any real freedom of contract [citation omitted]. However, there is evidence before the Court that the terms and provisions of this contract were explained to Baldemar Gonzalez, prior to his signing on behalf of himself and Plaintiff.

■ Baldemar Gonzalez did not testify at the proceeding below. The district court did not specify what evidence was adduced by appellee housing authority to establish that Baldemar Gonzalez, apparently uneducated and speaking little English, had understood that he was waiving his and appellant's constitutional rights to notice and hearing prior to seizure of their property. The narrow issue on appeal is whether the district court erred in ruling that, on the facts presented, appellant's husband had validly waived the right to notice and hearing. Since we are of the opinion that the record is devoid of substantial proof that Gonzalez "voluntarily, intelligently and knowingly" waived a constitutionally protected right, Fuentes v. Shevin, 407 U.S. 67, 94–95, 92 S.Ct. 1983, 32 L. Ed.2d 556; rehearing denied, 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972); D. H. Overmyer Co., Inc. v. Frick Co., 405 U.S. 174, 185–86, 92 S. Ct. 775, 31 L.Ed.2d 124 (1972), we va-

cate the district court order and remand for a finding on the important question of whether appellee housing authority presented evidence adequate to rebut the strong presumption against waiver of constitutional rights, Fuentes, supra, 407 U.S. at 94 n. 31, 92 S.Ct. 1983; Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); Brookhart v. Janis, 384 U.S. 1, 4, 86 S. Ct. 1245, 1247, 16 L.Ed.2d 314 (1966) ("There is a presumption against the waiver of constitutional rights, * * * and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.' " [citations omitted]).[4]

■ The Supreme Court in Fuentes v. Shevin, supra, and in numerous other cases,[5] has clearly indicated that a heavy burden must be borne by the party claiming that a "voluntary, intelligent, and knowing" contractual waiver has occurred. In ruling that no contractual waiver had taken place in Fuentes upon appellant's execution of a printed form conditional sales contract, the Court, 407 U.S. at 95, 92 S.Ct. 1983, noted several factors which bear on the type of printed form contract signed by Baldemar Gonzalez in the case before us:

> The purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale. The appellees made no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights. * * * [Quoting from D. H. Overmyer Co., Inc. v. Frick Co., supra, the Court continued,] "where the

---

We question whether a landlord, especially a creature of the state acting under color of state law, should be allowed to seize such property without notice. At the very least, any contractual waiver of notice prior to seizure should be made absolutely clear to a tenant waiving that right.

4. See also, Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Miranda v. Arizona, 384 U.S. 436,

444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Ohio Bell Tel. Co. v. Public Util. Comm'n, 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1937).

5. See cases cited in text at, and in, note 4 supra.

contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the [waiver] provision, other legal consequences may ensue [*i. e.*, no valid waiver will have occurred]."

Precisely because, on this record, we are not satisfied that Baldemar Gonzalez was "actually aware or made aware of the significance of the fine print now relied on as a waiver of constitutional rights," we remand the case to the district court under the authority, and in the light, of the Supreme Court's decisions in Fuentes, Overmyer, and Swarb v. Lennox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), all decided *after* the district court rendered its January 3, 1972, Memorandum Opinion in this case.[6]

It has been argued that in both *Fuentes, supra,* and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the seizure of property without notice or hearing was authorized not by contractual agreement but by statute, a fact which, it is urged, renders those cases inapplicable to the contractual situation before us. See Comment, Prejudgment Wage Garnishment: Notice and Hearing Requirements under Sniadach v. Family Finance Corp., 11 B.C.Ind. & Com.L.Rev. 462, 471–75 (1970). A close reading of *Fuentes,* however, discloses that, even though the primary thrust of the majority opinion was to strike down the constitutionally repugnant Pennsylvania and Florida prejudgment replevin statutes for their failure to provide for notice or hearing prior to property seizures, both Mr. Justice Stewart, writing for the majority, and Mr. Justice White, writing for the minority, addressed the issue before us, namely, purported waiver of a constitutional right by contract.

In *Fuentes* one of the appellants,[7] Mrs. Fuentes, who spoke little or no English,[8] had signed two conditional sales contracts for the purchase of a gas stove and stereophonic phonograph set. Under the contracts, the Seller retained title to the items, but Mrs. Fuentes was entitled to possession "unless and until she should default on her installment payments," 407 U.S. at 70, 92 S.Ct. at 1989, at which time, pursuant to the contracts, Seller, "at its option [could] take back the merchandise." *Id.* at 94, 92 S.Ct. at 2001. Mrs. Fuentes made her installment payments for more than a year. Then, with only $200 remaining to be paid on the contract total of $600, a dispute arose between her and the Seller over the servicing of the stove. The Seller instituted an action in small-claims court for the repossession of both the stove and stereo set, claiming that Mrs. Fuentes had refused to make payments. Simultaneously the Seller, acting pursuant to procedures prescribed in the Florida prejudgment replevin statute, obtained a writ of replevin, without notice to Mrs. Fuentes, which was executed by a sheriff. The Florida statute authorizing these procedures was held to be constitutional by a three-judge statutory court. Fuentes v. Faircloth, 317 F.Supp. 954 (S.D.Fla.1970). A dissenting judge, however, believed that by the mere signing of a contract permitting repossession the signer "does not waive his Fourteenth Amendment right to 'due process of law.'" *Id.* at 959.

The Supreme Court, per Mr. Justice Stewart, reversed, summarizing its holding in the following language: "We hold that the Florida and Pennsylvania prejudgment replevin provisions work a deprivation of property without due process of law insofar as they deny the right to a prior opportunity to be heard before chattels are taken from their pos-

6. Overmyer and Swarb v. Lennox were decided on February 24, 1972; *Fuentes* on June 12, 1972.

7. *Fuentes* was a consolidated appeal in which the Supreme Court decided two cases presenting the same issues: Fuentes v.

Faircloth, 317 F.Supp. 954 (S.D.Fla.1970), and Epps v. Cortese, 326 F.Supp. 127 (E. D.Pa.1971).

8. Fuentes v. Faircloth, *supra,* 317 F.Supp. at 956.

sessor." 407 U.S. at 96, 92 S.Ct. at 2002. Writing in dissent, Mr. Justice White expressed his view that creditors in Florida and Pennsylvania could still do by contract what they could not now do by statute:

> It would appear that creditors could withstand attack under today's opinion simply by making clear in the controlling credit instruments that they may retake possession without a hearing or, for that matter, without resort to judicial process at all. 407 U.S. at 102, 92 S.Ct. at 2005.

Justice White's observation, however, must be viewed with reference to Supreme Court majority pronouncements in several recent decisions of the Court; *i. e.,* the majority opinion in *Fuentes* itself, and the Court's decisions in D. H. Overmyer Co., Inc. v. Frick Co., *supra,* and Swarb v. Lennox, *supra.*

The majority in *Fuentes* addressed the "waiver by contract" argument presented by the Seller in that case. The conditional sales contracts there provided that upon default the Seller "may take back," "may retake," or "may repossess" the merchandise. Although the Court concluded that this contractual language "does not, on its face, even amount to a waiver," 407 U.S. at 95, 92 S.Ct. at 2002, the Court's analysis of Seller's argument is instructive with respect to the case before us. Mr. Justice Stewart wrote:

> Finally, we must consider the contention that the appellants who signed conditional sales contracts thereby waived their basic procedural due process rights. The contract signed by Mrs. Fuentes provided that "in the event of default of any payment or payments, Seller at its option may take back the merchandise. . . ." * * * These terms were parts of printed form contracts, appearing in relatively small type and unaccompanied by any explanations clarifying their meaning.

> In D. H. Overmyer Co. v. Frick Co., * * * the Court recently outlined the considerations relevant to determination of a contractual waiver of due process rights. Applying the standards governing waiver of constitutional rights in a criminal proceeding—although not holding that such standards must necessarily apply—the Court held that, on the particular facts of that case, the contractual waiver of due process rights was "voluntarily, intelligently, and knowingly" made. The contract in *Overmyer* was negotiated between two corporations; the waiver provision was specifically bargained for and drafted by their lawyers in the process of these negotiations. As the Court noted, it was "not a case of unequal bargaining power or overreaching. The Overmyer-Frick agreement, from the start, was not a contract of adhesion." Both parties were "aware of the significance" of the waiver provision.

The facts of the present cases are a far cry from those of *Overmyer.* There was no bargaining over contractual terms between the parties who, in any event, were far from equal in bargaining power. The purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale. The appellees made no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights.

The Court in *Overmyer* observed that "where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the [waiver] provision, other legal consequences may ensue." (citations and footnote omitted) 407 U.S. at 94–95, 92 S.Ct. at 2001.

The majority concluded that the contract language purporting to waive Mrs. Fuentes' constitutional right to due process had not in fact waived that right. 407 U.S. at 96, 92 S.Ct. 1983.

It is significant to note in *Overmyer* that, even though the Court affirmed

the lower court's finding of a contractual waiver, the Court emphasized the equality existing between the contracting parties (two corporations). The Court stated: "Our holding, of course, is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, [and] where there is great disparity in bargaining power, * * * other legal consequences may ensue." 405 U.S. at 188, 92 S.Ct. at 783.

In Swarb v. Lennox, *supra*, the companion case to *Overmyer*, the Court affirmed a three-judge district court decision which had held, *inter alia*, that confession of judgment clauses in consumer credit contracts did not constitute a waiver of the right to notice and hearing as to those debtors with incomes under $10,000 who were relatively uneducated. We deem it significant that the Supreme Court approved the three-judge panel's ruling that, since individuals in a class comprised of relatively poor and uneducated persons had been made to execute confessed judgments purporting to waive constitutionally protected rights, the contracts did not validly waive those rights since those persons had not knowingly and intelligently consented to waiver. The lower court drew important distinctions among members of the class who had signed such contracts. The lower court noted that where the debtor is an attorney, all that may be necessary to establish his understanding of a waiver provision is an affidavit of his profession; if the debtor is a non-high school graduate, however, far greater proof is needed:

> Since the procedure used for entry of confessed judgments on the above-mentioned notes is based on the concept of a waiver of notice without adequate understanding by the debtor, it violates the due process clause of the Fourteenth Amendment. It is not our function to dictate to a state exactly

what constitutes understanding waiver of notice in each particular case and what proof of such notice would comply with the above-mentioned decisions. Where the debtor is an attorney, all that may be necessary to prove that he understood the meaning and consequences of such a clause in a consumer financing note is an affidavit of such debtor's profession. On the other hand, more proof may be required of non-high school graduates since the phraseology of the clauses in the notes offered in evidence is most difficult for laymen to understand.[9]

\* \* \* \* \* \*

After a careful examination of the record, we find that there was no intentional waiver of a known right by members of the above class in executing the confession of judgment clauses. The evidence indicates that the debtors did not fully understand the rights which they were relinquishing by signing these notes, that is, the right to have notice and an opportunity to be heard prior to judgment * * *.[10]

Again adverting to the chronology of events in the case before us, on November 2, 1972 (ten months after the district court's decision was handed down), this Court in Hall v. Garson, 468 F.2d 845 (5th Cir. 1972), having before it the Supreme Court's June, 1972, decision in Fuentes v. Shevin, declared unconstitutional Article 5238a of the Texas Revised Civil Statutes, the Texas landlord lien law.[11] In that case a landlord, through his agent, had entered appellant's apartment to take a television set belonging to appellant, holding the set for past due rent. The landlord chose to act not upon any self-help provision appearing in the lease agreement but pursuant to Article 5238a, which granted to landlords a lien upon certain personal property not otherwise exempted from seizure by the Article,[12] for rent due and

9. Swarb v. Lennox, 314 F.Supp. 1091, 1100–1101 (E.D.Pa.1970).

10. *Id.* at 1100.

11. *See* note 3 *supra*.

12. *See* § 3 of Article 5238a, note 3 *supra*.

unpaid by the tenant. The Article authorized peremptory seizure and retention of such property, without notice or hearing, until the rent owing should be paid. We held:

> On the authority of Fuentes we hold that Tex.Rev.Stat.Ann. Art. 5238a works a "deprivation of property without due process of law insofar as [it denies] the right to a prior opportunity to be heard before chattels are taken from their possessor." 468 F. 2d at 847.

Noting that a landlord's seizure action pursuant to authority granted by Article 5238a "makes his actions those of the State," 468 F.2d at 848, we held the Texas landlord lien law repugnant on the ground that it contained "no requirement that the landlord first have the validity or the accuracy of his claim impartially determined, or that a need for immediate seizure be present" (*id.*) before deprivation of a property right occurred. In Hall v. Garson, then, we expressed our disapproval of the (statutory) procedure whereby a landlord could, without notice, seize a tenant's belongings for non-payment of rent.

It is true that the lien in the case before us was created by contract, as was the authority to enter and remove, and that neither was dependent upon any statute. And since the actions taken by appellees were entirely consistent with the terms of the rental agreement, this, it is argued, requires affirmance of the lower court's decision. That result would logically follow, were it not for the fact that this Court in Hall v. Garson, *supra*, and the Supreme Court in *Fuentes, Overmyer*, and Swarb v. Lennox, *supra*, have spoken so strongly in terms of the notice required prior to a prejudgment taking of property ("[appellant's] possessory interest in the goods, dearly bought and protected by contract, was sufficient to invoke the protection of the Due Process Clause", 407 U.S. at 86–87, 92 S.Ct. at 1997), especially when the contracting parties do not have equal bargaining power, and the tenant, as the appellants in *Fuentes*

and Swarb v. Lennox, is uneducated and speaks little English.

The district court recognized that the lease executed by Baldemar Gonzalez was a contract of adhesion. The Court took judicial notice of the fact that form leases are offered to tenants on an "accept this or get nothing basis" and that needy tenants such as migrant farm laborer Gonzalez are compelled to sign without any real freedom of contract. *See* Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970); Sellers v. Contino, 327 F.Supp. 230 (E.D.Pa.1971). Even if Gonzalez understood the contract language of waiver purportedly "explained to him" (and the evidence on this point is in need of clarification), it is not far-fetched to surmise that, under the circumstances, he would have signed any paper represented as a rental lease in order to secure shelter for himself and his family. Under these circumstances, it can hardly be said that his waiver of a constitutional right was "voluntarily, intelligently, and knowingly" made. In arriving at its decision the district court did not have the benefit of the Supreme Court decisions discussed *supra*, or this Court's decision in Hall v. Garson, *supra*, none of which had yet been decided. We agree that Clause 10 of the rental lease appears to be clear on its face, to one who can read or understand English; and the district court accepted appellees' assertion that the lease terms were explained to Gonzalez prior to his signing. Without more, however, these facts do not give rise to a finding that Gonzalez, signed with "an intentional relinquishment or abandonment of a known right or privilege," Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); nor, without more, is this evidence sufficient to rebut the presumption favoring the non-waiver of a constitutional right.

■ The district court also found that extraordinary circumstances existed which justified the summary seizure provision in the lease signed by Gonzalez. We do not find in this case any basis for placing the facts presented with-

in the "extraordinary situation" category which, the Supreme Court has ruled, may justify a peremptory seizure of property without prior notice. The Supreme Court decisions make quite clear that an "extraordinary situation" justifying summary seizure must be "truly unusual," that such a seizure must be "directly necessary to secure an important governmental or general public interest," and that there must be a "special need for very prompt action." *Fuentes, supra*, 407 U.S. at 90–91, 92 S.Ct. at 2000. The types of extraordinary situations cited by the Court involved summary seizures of property "to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against economic disaster of a bank failure, and to protect the public from misbranded drugs and contaminated food" (citations omitted). *Id.* at 91–92, 92 S.Ct. at 2000. The case before us hardly rises to such levels of "extraordinariness". Rather, as we ruled in our November 2, 1972, decision in Hall v. Garson, *supra*, rejecting the argument that a landlord lien situation is extraordinary in any way, "We have in the instant case no more than a private claim." 468 F.2d at 848 n. 4.[13]

■ Even if it be assumed, as appellees argued, that summary seizure helps conserve the housing authority's financial and administrative resources, essential to the provision of low-cost housing, such financial considerations do not give rise to an "extraordinary situation" justifying the denial of constitutional rights. The Supreme Court in *Fuentes* expressly rejected such financial concerns when constitutional rights are at stake:

A prior hearing always imposes some costs in time, effort, and expense, and it is often more efficient to dispense with the opportunity for such a hearing. But these rather ordinary costs cannot outweigh the constitutional right. [citations omitted] Procedural due process is not intended to promote efficiency or accommodate all possible interests: it is intended to protect the particular interests of the person whose possessions are about to be taken. [Quoting from Stanley v. Illinois, 405 U.S. 645, 656 [, 92 S.Ct. 1208, 31 L.Ed.2d 551] the Court continued,] ". . . the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones." 407 U.S. at 90–91 n. 22, 92 S.Ct. at 1999.

■ In summary, we believe that the interests of justice are best served by vacating the judgment below and remanding this case to the district court, in order that the court may pass upon the issue presented in the light of the decisions in *Fuentes, Overmyer,* Swarb v. Lennox, and Hall v. Carson, *supra.* Private parties dealing at arms' length certainly should have the right to agree upon whatever contract terms they may choose. This right, however, as the cases discussed above indicate, may be circumscribed by factors that are factually relevant. The district court adverted to one such factor, deemed significant in *Overmyer, i. e.,* that printed form leases such as that executed by Baldemar Gonzalez "are offered to tenants [espe-

---

13. The district court properly ruled that the appellee housing authority can obtain lien rights no greater than those obtained by a private landlord:

While this Court might feel that the Housing Authority of Hidalgo County, a creature of the State, should not extract from its tenants a greater lien than that created by statute, and that all articles exempt from the lien should have been returned to Mrs. Gonzalez, the Court feels that it cannot distinguish between the Housing Authority as a landlord and a private landlord, and therefore refuses to make such a distinction.

District Court Memorandum Opinion of January 3, 1972, at 5–6.

cially to penurious migrant workers] on 'an accept this or get nothing basis' and that needy tenants are compelled to sign without any real freedom of contract." In view of this fact, indeed, precisely because of this fact, we remand this case to the district court for a specific finding as to whether Gonzalez signed with "an intentional relinquishment or abandonment of a known right or privilege," and whether he waived his constitutional right to due process "voluntarily, intelligently, and knowingly." On the facts as presented by the record before us, the heavy burden imposed on appellees to rebut the presumption against waiver of constitutional rights, see *Fuentes, supra*, 407 U.S. at 94 n. 31, 92 S.Ct. 1983, has not been met. This panel will retain jurisdiction of the case. Upon the district court's determination of the issue as stated *supra*, the cause will be returned to us.

We will await both a ruling by the district court and the expanded record before making a final disposition of this appeal.

Remanded.