**UNITED STATES of America,**
**Appellant,**

v.

**QUEEN'S COURT APARTMENTS, INC.,**
**Appellee.**

**No. 17305.**

United States Court of Appeals
Ninth Circuit.

Nov. 13, 1961.

See also 288 F.2d 253.

———◆———

William H. Orrick, Jr., Asst. Atty. Gen., John G. Laughlin and Herbert E. Morris, Atty., Dept. of Justice, Washington, D. C., and Warren C. Colver, U. S. Atty., Fairbanks, Alaska, for appellant.

Lycette, Diamond & Sylvester, Herman Howe and Lyle L. Iversen, Seattle, Wash., and Collins & Clasby, by Charles J. Clasby, Fairbanks, Alaska, for appellee.

Before CHAMBERS, HAMLIN and KOELSCH, Circuit Judges.

HAMLIN, Circuit Judge.

United States of America, appellant herein, filed an action in September, 1958, in the District Court for the District of Alaska, Fourth Division, to foreclose a mortgage on property owned by Queen's Court Apartments, Inc., a corporation, appellee herein.

The mortgage was executed by appellee to Federal National Mortgage Association, a corporation organized and existing pursuant to the provisions of the National Housing Act, as amended, to secure payment of a promissory note of even date therewith in the principal sum of $918,352.42. After a default in the payments due on said note, the note and mortgage was assigned to the Federal Housing Commissioner on April 22, 1958, who, pursuant to the terms of the note and mortgage, declared the entire principal sum and accrued interest thereon immediately due and payable. As set out above, an action was thereafter filed to foreclose the mortgage, in which action a receiver was requested by appellant but denied by the district court.

At the time of the execution of the note and mortgage, mortgage insurance was provided by the Federal Housing Commissioner pursuant to Title 6 of the National Housing Act, as amended, 12 U.S.C.A. § 1736 et seq.

When the matter came on for trial in November, 1960, the district judge decreed a foreclosure of the mortgage, conditioned, however, upon the appellant paying over to the appellee certain moneys on deposit in a reserve fund amounting to $27,213.32. The appellant appealed to this court from this conditional judgment. The district court had jurisdiction under 28 U.S.C.A. § 1345, and this court has jurisdiction under 28 U.S. C.A. § 1291.

Appellant relied upon the following statement of points:

"1. The district court erred in conditioning its order of foreclosure in this case on the United States returning to Queen's Court Apartments, Inc., prior to foreclosure sale and determination of deficiency, the monies in the replacement reserve fund.

"2. The district court erred in denying the United States the appointment of a receiver pending the proceedings before it."

We shall discuss these points in the above order.

The National Housing Act, 12 U.S. C.A. § 1702 et seq., provides that the Commissioner, upon such terms as he may prescribe, is authorized to make commitments for the insuring of mortgages prior to the date of their execu-

tion.[1] Section 1742 provides: "The Commissioner is authorized and directed to make such rules and regulations as may be necessary to carry out the provisions of this subchapter." Under this authority the following regulations, among others, were promulgated:

24 C.F.R. § 232.1 (1959 ed.)

*"Information for preliminary examination.* (a) Information required for the examination of a Rental Housing Project under section 207 shall be submitted in the form of an application for mortgage insurance by an approved mortgagee and by the sponsors of such project through the local Federal Housing Administration office, on approved FHA Application Form (executed in triplicate). No application will be considered unless the exhibits called for by such form are furnished and a fee of $1.50 per thousand of the face amount of the mortgage loan applied for (referred to as 'application fee') is paid."

24 C.F.R. § 232.2 (1959 ed.)

*"Issuance of commitment.* (a) Upon approval of an application a commitment will be issued setting forth the terms and conditions upon which the mortgage will be insured, including special requirements applicable to the project and requiring the submission in final form within a time specified of all appropriate documents, drawings, plans, specifications, and other in-

struments evidencing full compliance satisfactory to the Commissioner with the provisions of this part and with such terms and conditions."

24 C.F.R. § 232.3 (1959 ed.)

*"Mortgage forms.* The mortgage must be executed upon a printed form approved by the Commissioner for use in the jurisdiction in which the property covered by the mortgage is situated, by a mortgagor with the qualifications hereinafter provided in the part. * * * Any changes in the printed form desired by the mortgagor and mortgagee must receive prior written approval of the Commissioner."

24 C.F.R. 280.30(d) (1949 ed.)

"A reserve for replacement shall be accumulated and maintained with the mortgagee so long as the mortgage insurance is in force, and the amount and types of such reserves and conditions under which they shall be accumulated, replenished and used, shall be specified in the regulatory agreement or charter. Failure to comply with the terms of this requirement may be considered by the Commissioner as a default under the terms of the regulatory agreement or charter."

The appellee's Articles of Incorporation provided for the replacement fund mentioned in 24 C.F.R. § 280.30(d) by requiring that the sum of $388.92 be deposited in such fund monthly.[2] At

---

1. 12 U.S.C.A. § 1709(a).

2. Queen's Court Apartments, Inc. "Amendments to Articles of Incorporation
    *    *    *    *    *
    "Article Sixth.
"(d) Anything to the contrary herein notwithstanding, no dividends shall be paid upon any of the capital stock of the corporation (except with the consent of the holders of a majority of the shares of each class of stock then outstanding) until all amortization payments due under the Mortgage insured by the Commissioner have been paid, and *until a reserve fund for replacements* is first established

and maintained by the allocation to such reserve fund in a separate account with the mortgagee (or in the case of a Deed of Trust with the Beneficiary) or in a safe and responsible depository, designated by the mortgagee commencing on the date of the first payment towards amortization of the principal of the mortgage insured by the Commissioner unless a later date is approved in writing by the holders of the preferred stock, of an amount equal to Three Hundred Eighty-eight and 92/100 ($388.92) and a like amount monthly thereafter. Such fund whether in the form of a cash deposit or invested in obligations of, or fully guaranteed as to principal and interest by the

the time of the foreclosure proceedings this replacement fund contained the sum of $27,213.32, and the court had reference to this fund when it decreed that this amount should be paid over to appellee before execution could be had on the judgment of foreclosure.

The appellant contends that the district court was in error when it required the repayment of this replacement fund and makes three contentions in respect thereto. (1) It relies upon the decision of United States v. Pine Hill Apartments, 261 F.2d 667 (5th Cir. 1958); (2) it claims that it was entitled to hold the moneys in the replacement fund pending the foreclosure sale by virtue of its right of set-off; and (3) it contends that the court had no jurisdiction to make an award to appellee of the moneys in the replacement fund.

In the Pine Hill case a mortgage was being foreclosed which had been insured by the Federal Housing Administration. The mortgage contained similar provisions to those we find in the instant case. The charter of the mortgagor provided that certain monthly payments should constitute a reserve fund for replacements, and that the fund would be under the control of the mortgagee. There, as here, it was agreed that withdrawals from such fund could be made only upon receipt of permission from the mortgagee. In the Pine Hill case, when a default was made in the payments, the mortgagee "commenced a strict foreclosure by advertising."[3] The mortgagor made a demand on the mortgagee that the indebtedness be brought into a current position by the application of funds from the replacement reserve fund. This demand was rejected by the mortgagee. Later, the mortgagee transferred and assigned the note and mortgage to the FHA Commissioner. The replacement

reserve fund was also turned over to the Federal Housing Administration which gave the mortgagor notice that the entire sum was due and payable. The United States then commenced an action to foreclose. While it was admitted that certain installments had not been made by the mortgagor when they were due, the contention was made that the moneys that were in the replacement reserve fund should have been applied to cover the unpaid installments and thus prevent the occurrence of a default. The court in its decision disagreed with this contention and stated as follows:

"There is nothing in the mortgage which requires such application nor is there, so far as we can ascertain, any requirement of the Georgia law that such application be made. Therefore, we conclude, the failure to pay the monthly installments put the mortgage in default, and under its terms, the holder was authorized to declare the entire balance due and payable."[4]

Certain contentions were made by the parties as to whether the mortgagor was or was not insolvent. The court, however, stated:

"The Government is entitled to proceed with the foreclosure irrespective of the insolvency of the Company. Should a deficiency exist after the application of the funds subject to the Government's lien, including the reserve fund for replacement, and the application of the net proceeds of the foreclosure sale, and the Company is not insolvent, the Government would be entitled to share ratably as to its deficiency with other creditors, including the intervenors, as to unencumbered funds."[5]

United States of America shall at all times be under the control of the mortgagee. Disbursements from such funds, whether for the purpose of effecting replacements of structural elements, furnishings and mechanical equipment of the project or for any other purpose, may be

made only after receiving the consent in writing of the holders of the preferred stock." [Emphasis added.]

3. 261 F.2d at 669.

4. Id. at 670.

5. Id. at 671.

We believe that the Pine Hill case supports the contention of appellant that it was not required to use the replacement fund to make up the payments which were delinquent upon the note, and that it was not required to credit the mortgagor with the funds in this reserve replacement fund prior to the time for determination of whether or not there was a delinquency after the foreclosure sale.

We also agree with the second contention made by the government that the government had a right to hold these funds as a set-off against any possible amount due the government after a foreclosure sale. In fact, appellee concedes that the government has a right of set-off, its contention being that the government has no right to choose the time at which it will apply the funds in its hands as a set-off. We cannot agree with appellee's contention in this regard. The payment of the funds in the replacement fund was a condition upon which the money was originally loaned. If the government was required to use these funds to wipe out any possible monthly delinquent payments as they became due, the replacement fund could be wiped out very quickly and any value that arises from requiring such a fund would be dissipated.

We hold that the appellant was not required to return the funds held in the replacement fund prior to foreclosure and that the district court was in error in so conditioning its order of foreclosure. We disagree with appellee's contention that equity required the payment of this fund to appellee prior to foreclosure. We see no inequity in the fund being held by appellant until after the foreclosure sale. If there is then a deficiency in the amount due to appellant the funds can properly be applied toward reducing such deficiency. If there is no deficiency, the claim of appellee to such funds can then be recognized and any portion thereof to which appellee may be entitled may be paid to it.

As we stated in View Crest Garden Apartments v. United States, 281 F.2d 844, 848 (9th Cir. 1960): "* * * we think good reasons appear for holding that federal policy requires affording every reasonable protection to the security of federal investment."[6]

Appellant further contends that it was entitled to have a receiver appointed during the pendency of the foreclosure action.

On February 17, 1961, after the judgment decreeing the conditional foreclosure was rendered, appellant filed a motion with the district court for the appointment of a receiver.[7] Four days later, on February 21, 1961, appellant timely filed its notice of appeal from the judgment of conditional foreclosure. On March 3, 1961, when appellant's motion for a receiver came for hearing before the district judge, the motion was denied, the district judge apparently being of the opinion that he had lost jurisdiction of the case by reason of the appeal. Thereafter, on March 17, 1961, appellant applied to this court for the appointment of a receiver pending the appeal to this court. We then made an order on March 29, 1961, phrased in the following language:

"* * * [I]t appears to us that the appointment of a receiver to collect the rents, issues and profits pending the disposition of the appeal in this court is proper.

"Accordingly, the case is remanded to the district court with directions to appoint a receiver of the mortgaged premises with power to collect the rents, issues and profits and to pay the taxes, insurance and

---

6. In view of our holding in favor of government contentions 1 and 2, we do not reach government's contention 3.

7. Prior to this time two similar motions had been denied by the district court.

Appellant's first motion was made on September 4, 1958, and denied on October 17, 1958. The second motion was made on April 15, 1960, and denied on April 29, 1960.

necessary maintenance under the supervision of the district court. It is further ordered that the district court shall have continuing jurisdiction over said receivership during the pendency of the appeal in this court from the judgment heretofore rendered."[8]

On April 5, 1961, the district court in compliance with the direction of this court appointed a receiver.

Our order of March 29, 1961, directed only that a receiver be appointed during the pendency of this appeal. However, we are of the opinion that appellant is entitled to the appointment of a receiver for the duration of the foreclosure action and not only during the pendency of this appeal.

Appellee contends that the question of appellant's right to a receiver is moot because this right was established by our order of March 29, 1961. Regardless of any merit that appellee's contention might have with respect to appellant's right to a receiver *before* this appeal was taken, this contention has no merit with respect to appellant's right to a receiver *after* this appeal is final in view of the fact that our order of March 29, 1961, only provided for the appointment of a receiver during the pendency of this appeal.

The mortgage executed by appellant expressly provided for the appointment of a receiver to collect the rents and profits "in any action to foreclose."[9] The provision as set out below was one that

was required to be included in the mortgage form by the Federal Housing Commissioner. Its inclusion was a condition upon which mortgage insurance was to be provided. As this court said in View Crest Garden Apartments v. United States, supra:

"Mortgage insurance was provided pursuant to § 908 of Title IX of the National Housing Act, 12 U.S. C.A. § 1750g, which authorized the Federal Housing Commissioner to insure mortgages on multi-family rental projects. The House Report (U.S.Code Cong. and Adm.Service 1951, p. 1720) discloses that Title IX was enacted 'to provide special mortgage insurance aids to private industry for the production of housing needed in defense areas', and that the FHA would be permitted to 'underwrite projects which might not meet the long-term normal criteria of economic soundness, especiallly as to location and continued marketability, which are required under the regular FHA program.' Appellant's Articles of Incorporation show that one of the principal objectives of the corporation was to secure financing under § 908.

"Without federal backing there would have been no loan, no mortgage, and probably no corporation. Congress, in order to obtain necessary rental accommodations for essential defense workers, authorized the Federal Housing Commissioner

---

**8.** United States v. Queen's Court Apartments, Inc., 288 F.2d 253, 255 (9th Cir. 1961).

**9.** The mortgage provided:
"That the holder of this mortgage, in any action to foreclose, shall be entitled to the appointment of a receiver of the rents and profits of the mortgaged premises as a matter of right and without notice, with power to collect the rents, issues, and profits of said mortgaged premises, due and becoming due during the pendency of such foreclosure suit, such rents and profits being hereby expressly assigned and pledged as additional

security for the payment of the indebtedness secured by this mortgage, without regard to the value of the mortgaged premises or the solvency of any person or persons liable for the payment of the mortgage indebtedness. The mortgagor for himself and any subsequent owner hereby waives any and all defenses to the application for a receiver as above and hereby specifically consents to such appointment without notice, but nothing herein contained is to be construed to deprive the holder of the mortgage of any other right, remedy, or privilege it may now have under the law to have a receiver appointed."

to provide financial insurance for risky, commercially unacceptable projects. It is not unnatural that the mortgage contains a provision entitling the holder to a receiver of rents and profits in the event of foreclosure. Having in mind the stipulation in the mortgage and the nature of the transaction, we perceive no good reason for saying that federal law denies to the government a remedy calculated to advance 'the federal policy to protect the treasury and to promote the security of federal investment which in turn promotes the prime purpose of the Act—to facilitate the building of homes by the use of federal credit * * *.' United States v. View Crest Garden Apts., 9 Cir., 1959, 268 F.2d 380, 383."[10]

We hold that appellant is entitled to have a receiver appointed to collect the rents, issues and profits in accordance with the terms of the mortgage during the pendency of the foreclosure action.

The judgment is reversed, and the case is remanded for further proceedings in accordance with this opinion.