**UNITED STATES of America**

v.

**MOUNTAIN VILLAGE COMPANY.**

**Civ. A. No. 76-2845-F.**

United States District Court,
D. Massachusetts.

Dec. 13, 1976.

Mary Brennan, Asst. U. S. Atty., Boston, Mass., J. Christopher Kohn, Dept. of Justice, Washington, D. C., for plaintiff.

Marcus E. Cohn, Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

FREEDMAN, District Judge.

This matter is before the Court on defendant's motion to vacate the Order of July 30, 1976 appointing a receiver of certain mortgaged property owned by the defendant, directing the defendant to turn over to the receiver the mortgaged property and various property associated with it, and enjoining the defendant from interfering with the receiver's management of the property.[1]

Defendant Mountain Village Company, a limited partnership organized under the laws of Massachusetts, is the owner of Mountain Village, a multifamily, low and moderate income housing project located in Worcester, Massachusetts. The mortgage on the property was insured by the Department of Housing and Urban Development (HUD) pursuant to Section 221(d)(3) of the National Housing Act, 12 U.S.C. § 1715*l* (d)(3). The defendant, acting through its general partner, Max R. Kargman, executed certain notes and mortgages in connection with the financing of this project which have been assigned to and are now held by the Secretary of HUD. On July 28, 1976, the plaintiff instituted a foreclosure action against the defendant and sought the appointment of a receiver to operate the Mountain Village property during the pendency of such action. Application for the receiver was made by the plaintiff mortgagee without notice to the defendant pursuant to the express terms of the mortgage agreement which provides in Paragraph 5:

> That upon default hereunder Mortgagee shall be entitled to the appointment of a receiver by any court having jurisdiction, without notice, to take possession and protect the property described herein and operate same and collect the rents, profits and income therefrom.[2]

The defendant's objection to this Court's Order of July 30, 1976 is basically two-fold. First, it argues that appointment of the receivership was not warranted in this case. Secondly, it maintains that the Court lacked personal jurisdiction over the defendant to order it to turn over property other than the mortgaged project itself to the receiver

1. Although the defendant filed Notice of Appeal on September 28, 1976 with regard to the appointment of the receiver, it has requested leave of the Court of Appeals to allow this Court jurisdiction to consider this motion. This motion was allowed by the Court of Appeals on December 10, 1976.

2. The Regulatory Agreement executed by the defendant and the Federal Housing Commissioner, and expressly incorporated into the mortgage, provides in Paragraph 10(d) that upon default the Commissioner may:

> Apply to any court, State or Federal, for specific performance of this Agreement, for an injunction against any violation of the Agreement, for the appointment of a receiver to take over and operate the project in accordance with the terms of the Agreement, or for such other relief as may be appropriate, since the injury to the Commissioner arising from a default under any of the terms of this Agreement would be irreparable and the amount of damage would be difficult to ascertain.

since the Order was issued without notice to the defendant. The defendant claims that such an order issued without notice is in violation of Rule 65(a)(1) of the Federal Rules of Civil Procedure.[3]

This Court holds that the plaintiff is entitled to the appointment of a receiver in accordance with the terms of the mortgage agreement. The Court also holds that the Order directing the defendant to turn over certain property to the receiver does not require personal jurisdiction over the defendant since it is in essence merely an Order enjoining defendant from interfering with the functioning of the receiver. The defendant's motion is thereby denied.

It is undisputed that a default has occurred. Thus, at least under the terms of the mortgage, the plaintiff is thereby entitled to the appointment of a receiver without notice. However, defendant contends that this provision is invalid. It argues that the waiver of its right to notice in the mortgage was not a legitimate waiver and therefore the appointment of a receiver ex parte was a denial of due process.

The Court rejects this argument and concludes that the waiver provision is valid. Due process rights to a hearing and notice may be legitimately waived in a contract. *D. H. Overmyer, Inc. of Ohio v. Frick Co.,* 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972). This may be so even if one of the parties to the contract is the federal government. *Cf. United States v. Wynn,* 528 F.2d 1048, 1050 (5th Cir. 1976). The validity of any waiver, of course, depends upon the facts of a particular case. *D. H. Overmyer, Inc. of Ohio v. Frick Co., supra,* 405 U.S. at 188, 92 S.Ct. 775. *United States v. Wynn, supra,* 528 F.2d at 1050. Factors to consider in determining the validity of a purported contractual waiver include the clarity of the contractual language itself, the relative bargaining power of the parties, and the mortgagor's ability to understand the provisions of the contract. *United States v. Wynn, supra,* at

1050. The Supreme Court has stated that "a waiver of constitutional rights in any context must at the very *least,* be clear." *Fuentes v. Shevin,* 407 U.S. 67, 93, 92 S.Ct. 1983, 2002, 32 L.Ed.2d 556 (1972). The mortgage provision here meets this requirement. The waiver is clear and unambiguous on its face.

The defendant claims that there was tremendous disparity between the bargaining positions of the government and itself and that when the agreement was signed it did not understand the meaning of the mortgage provision appointing a receiver to be as the plaintiff presently maintains. In his affidavit of August 31, 1976, Mr. Max Kargman, the general partner who executed the mortgage on behalf of the defendant, stated that it was his belief "that there was no room for any applicant to negotiate or bargain about the standard clauses" if he wished to obtain the mortgage insurance for Mountain Village. He further stated that "it was not my understanding that the Company was consenting to the irrevocable appointment of a receiver as a matter of right during the pendency of any foreclosure action that might be filed, no matter how baseless."

Mr. Kargman has extensive experience in the real estate field. According to this affidavit, he was involved in urban land development for more than thirty years, and prior to that time practiced real estate law for more than 14 years. On the basis of such experience, Mr. Kargman should not be heard to now complain that he did not understand what he was signing. Nor can it be said that the government has no right to protect its investments by inclusion of such a provision in its contracts. Without federal backing there would probably have been no loan and no mortgage. Consideration was therefore given for this provision's inclusion in the mortgage agreement. I agree with the Ninth Circuit that "good reasons appear for holding that federal policy requires affording every reason-

---

**3.** Rule 65(a) provides:

(1) *Notice.* No preliminary injunction shall be issued without notice to the adverse party.

able protection to the security of federal investment." *View Crest Garden Apartments, Inc. v. United States,* 281 F.2d 844, 848 (9th Cir.), *cert. denied,* 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195 (1960). In view of these facts, the defendant's challenge to the validity of the mortgage provision appointing a receiver is without merit.

■ The defendant further claims that even if the waiver were proper, the mortgage provision alone could not justify the appointment of a receiver. The defendant maintains that, the mortgage provision notwithstanding, the plaintiff must still show a factual basis to warrant the receiver's appointment. This factual basis, the defendant asserts, is threefold: (1) a showing that the security is inadequate to satisfy the outstanding indebtedness; (2) insolvency of or doubtful financial standing of the mortgagor; and (3) a likelihood of success by the mortgagee in the foreclosure action. I disagree for the reasons set forth below.

In *Garden Homes v. United States,* 200 F.2d 299 (1st Cir. 1952), the First Circuit considered the effect which should be given to a mortgage provision allowing for the appointment of a receiver to collect rents and profits pending the outcome of the foreclosure suit, a provision significantly narrower than the one in the present case. In *Garden Homes* the district court had granted the receiver the right to operate and manage the mortgaged property. The Court of Appeals held that the powers given to the receiver were too expansive. It began its opinion by stating the general rules applicable to the appointment of a receiver according to the principles of equity. It noted that although appointment of a receiver is discretionary with the court, it is an extraordinary remedy. Thus,

. . . a receiver, even of rents and profits, will not generally be appointed on the application of a mortgagee in a suit to foreclose except upon a "sufficient showing" of two matters: (1) that the mortgaged property is inadequate securi-

ty for the debt with interest and costs of suit, and (2) that the mortgagor or other person liable for the debt is insolvent, beyond the jurisdiction "or in such doubtful financial standing that an execution against him for any deficiency would be unavailing." And to warrant the appointment of a receiver to manage and operate mortgaged property pending foreclosure, as well as only to collect its rents and profits during that time, more than the above matters must appear. *Id.* at 301.

However, *Garden Homes* is distinguishable from the present case. In *Garden Homes* the defendant mortgagor had conceded that the court could appoint a receiver without notice upon default. Its objection was based on granting the receiver powers in excess of those expressly bestowed upon him by the mortgage agreement. The court in *Garden Homes* was not therefore directly faced with the issue involved in the present case, namely, whether a receiver could be appointed to operate and manage the mortgaged property on the sole basis of a mortgage provision allowing for such appointment. The Court of Appeals agreed with the defendant and on the basis of the showing before it vacated the appointment of the receiver.

There is, nevertheless, some indication that the Court of Appeals in *Garden Homes* would have come to an affirmative answer to the question presently before this Court. In referring to its decision in *Garden Homes* in a subsequent opinion, the Court of Appeals stated that it had "pointed out that under the express terms of the mortgage itself the court in the event of default was empowered on the mortgagee's application to appoint without notice a receiver to collect the rents, issues and profits of the mortgaged premises due and becoming due during the pendency of a suit to foreclose." *Garden Homes, Inc. v. United States,* 207 F.2d 459–460 (1st Cir. 1953).[4]

4. Upon remand from the first decision in *Garden Homes v. United States,* 200 F.2d 299 (1st Cir. 1952), the district court appointed a receiv- er to collect all rents and profits of the mortgaged premises falling due during the pendency of the foreclosure suit. The receiver was to

Other circuits have also considered the issue presented by this case. In *View Crest Garden Apartments, Inc. v. United States,* 281 F.2d 844 (9th Cir.), *cert. denied,* 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195 (1960), the Ninth Circuit relied upon the inadequacy of the security and the poor financial standing of the mortgagor to justify its appointment of a receiver. However, the court noted in strong dicta that even in the absence of these two conditions, circumstances may warrant the appointment of a receiver. The court found just such a circumstance in the policy behind the National Housing Act:

> Having in mind the stipulation in the mortgage and the nature of the transaction, we perceive no good reason for saying that federal law denies to the government a remedy calculated to advance "the federal policy to protect the treasury and to promote the security of federal investment which in turn promotes the prime purpose of the Act—to facilitate the building of homes by the use of federal credit . . . ." *United States v. View Crest Garden Apts.,* 9 Cir., 1959, 268 F.2d 380, 383.

*View Crest Garden Apartments, Inc. v. United States, supra,* at 848. This reasoning may be equally applicable to the present case.

Subsequently in *United States v. Queen's Court Apartments, Inc.,* 296 F.2d 534, 540 (1961), the Ninth Circuit went a step further and stated unequivocally that: "[w]e hold that [the mortgagee] is entitled to have a receiver appointed to collect the rents, issues and profits in accordance with the terms of the mortgage during the pendency of the foreclosure action." [5] Although

the powers given to the receiver under the mortgage agreement were less expansive than in the present case, the conclusion of the Ninth Circuit is essentially the same as that now reached by this Court.

The defendant distinguishes the mortgage provision in *View Crest* and *Queen's Court* from the case now before me by emphasizing that in the former cases, unlike the present case, the mortgage expressly stated that the mortgagee was entitled to the appointment of a receiver "as a matter of right," that the mortgagor "waive[d] any and all defenses to the application for a receiver . . . and . . . specifically consent[ed] to such appointment without notice . . . ." *View Crest, supra,* 268 F.2d at 845 n.1 and *Queen's Court, supra,* 296 F.2d at 539 n.9. While such language is perhaps more specific than that involved in the present case, it does not warrant a contrary conclusion to that reached in those cases.

In *United States v. Chester Park Apartments, Inc.,* 332 F.2d 1, 2, 5 (8th Cir.), *cert. denied* 379 U.S. 901, 85 S.Ct. 191, 13 L.Ed.2d 176 (1964), the Eighth Circuit found it unnecessary to resolve the issue now pending before this Court since the facts of the case were alone sufficient to justify the appointment of a receiver. However, it is significant that, in referring to its holding in *Chester Park* in a subsequent opinion, the Eighth Circuit simply stated that "[i]n *Chester Park,* we held only that the government was entitled to have a receiver appointed in accordance with the explicit terms of the mortgage." *United States v. Chappell Livestock Auction, Inc.,* 523 F.2d 840 (8th Cir. 1975).

---

pay the mortgagor out of gross rents collected all necessary and reasonable expenses for maintenance when supported by proper vouchers, rather than allowing the mortgagor to collect rents and turn over the net amount to the receiver after payment of maintenance expenses deemed necessary by the mortgagor. This order was the basis of appeal in the second *Garden Homes* case.

5. In an earlier decision in the same case, the court appointed a receiver pending the appeal of the disposition of certain funds in reserve.

The court at that time made its decision after considering certain facts, including the inadequacy of the security, the physical condition of the property, the large number of unrented apartments, and the prospect of further delay during appeal. However, in subsequently upholding the appointment of a receiver in accordance with the terms of the mortgage beyond the pendency of the appeal on the reserve fund issue, the court made no such reference to any factual considerations.

On the basis of the reasoning advanced by the holdings and dicta in the decisions of the First, Eighth and Ninth Circuit Courts of Appeals, I conclude that the mortgage provision appointing a receiver is valid and enforceable in the present action.

■ There is, of course, authority to support the defendant's contention that "a clause in a mortgage authorizing the appointment of a receiver when default is made or otherwise, conveys no absolute right to the appointment of a receiver by the Court." 4 Clark on Receivers, § 950 at 1718 (1959), and cases cited therein. Under this reasoning, such a mortgage provision is at best a factor to consider in determining whether the appointment of a receiver is justified. Even using this analysis, however, the appointment of a receiver would be warranted in the present action. Great weight must be given to the mortgage provision in determining the necessity of appointing a receiver in light of the federal policy behind the National Housing Act and the role that such mortgage provisions play in implementing that policy by protecting federal investment. *See View Crest Garden Apartments, Inc. v. United States, supra,* at 848. When this is combined with the admitted inadequacy of the security, the appointment of a receiver is justified.

■ Finally, even if a showing of insufficiency of security and insolvency or poor financial standing of the mortgagor must be shown as preconditions to the appointment of a receiver, such a showing can be made on the record now before this Court. As noted above, the first condition—inadequacy of the security—is admitted by the defendant and therefore is not at issue. The second condition—poor financial standing of the mortgagor—involves an examination of the terms of the agreement. Paragraph 17 of the Regulatory Agreement[6] relieves the general partners of the defendant mortgagor from personal liability for payments due under the note and mortgage. Thus, the mortgagee has no recourse for any deficiency after foreclosure. The defendant argues however that this provision does not justify the appointment of a receiver since such exemption is not tantamount to a showing of insolvency or financial instability on the part of the mortgagor. On the contrary, the defendant asserts that Paragraph 17 of the Regulatory Agreement provides sufficient protection for the mortgagee since it renders the general partners liable "(a) for funds or property of the project coming into their hands which, by the provisions hereof, they are not entitled to retain; and (b) for their own acts and deeds or acts and deeds of others which they have authorized in violation of the provisions hereof." This argument, while appealing, must fail. The solvency of a mortgagor is of concern to the mortgagee as an assurance to the mortgagee that his investment will be protected and that it will have some recourse in the event of a deficiency upon a foreclosure sale. While the defendant's argument may be valid with regard to some protection for the mortgagee against improper management, it fails to provide any kind of assurance of payment of a deficiency after foreclosure if that deficiency did not result from actions in violation of the mortgage agreement. Paragraph 17, therefore, does not preclude appointment of a receiver.

■ In the event the mortgage terms were not controlling, the defendant has correctly asserted that the plaintiff would have to make some showing of its likelihood to succeed in the foreclosure action. 4 J. Pomeroy, A Treatise on Equity Jurisprudence § 1331 at p. 2653 (3d ed. 1905). The defendant argues that the plaintiff cannot meet this burden in light of the decision of the District Court for the District of Columbia in *Kent Farm Co. v. Carla Hills,* 417 F.Supp. 297 (1976). Assuming, without deciding, that this decision was correct, it does not necessarily preclude plaintiff from showing a likelihood of success in the foreclosure action. In *Kent Farms,* the court

6. As footnote 2 states, the terms of the Regulatory Agreement are expressly incorporated into the mortgage agreement.

preliminarily enjoined mortgage foreclosure proceedings by HUD, although the mortgage payments were in arrears. The basis of the injunction was that HUD had failed to consider relevant factors and provide a rational consistent statement of its reasons for foreclosing in view of its moratorium policy as to certain HUD-held mortgages.

At best, the *Kent Farm* decision would mandate that further action would not be taken by the district court with regard to foreclosure until adequate reasons had been set forth by HUD to explain why this project was being exempted from the HUD moratorium on certain mortgage foreclosures. Without delving into a thorough analysis of the factors necessary to justify such administrative action in the present case, it is sufficient to state that on the basis of the affidavits submitted by Mr. Kargman, the affidavit submitted by Mr. Salk, the Director of the Housing Management Division of the Boston Area office of HUD and the attached HUD Audit Report, and the First Quarterly Report of the Receiver filed November 19, 1976, the Court finds there is sufficient factual dispute at this point to indicate that the plaintiff has shown at least a reasonable likelihood that it will succeed in its foreclosure action.

■■■ This Court also rejects the defendant's contention that Paragraph 4 of the July 30th Order is invalid as the Court lacked personal jurisdiction over the defendant. In that portion of the Order, defendant was "enjoined from interfering in any way with the mortgaged property or the receiver in his possession, control and management of said property during the pendency of this foreclosure action." Specifically, the Court directed the defendant "to turn over and deliver to the receiver or his duly authorized representative all of the mortgaged property, real, personal, and mixed, including the bank accounts associated with or derived in any way from the mortgaged property, tenants' security deposits, and all property of any nature in, on, or connected with or used in the operation of the mortgaged property." Defendant does not contest the power of the Court to prohibit defendant from interfering with the receiver's actions. 2 Clark on Receivers, § 625.1 at 1023–1024 (1959). It does, however, contend that the order to turn over specific property goes beyond such non-interference and constitutes an order directing the defendant to take affirmative action, thus requiring personal jurisdiction over the defendant. I disagree with this distinction.

If the terms of the mortgage govern as to the appointment of a receiver, then the Court must also look to that contract to ascertain the precise powers bestowed upon the receiver by such appointment. The mortgage provides for the appointment of a receiver "to take possession and protect the property described herein and operate same and collect the rents, profits and income therefrom." Mortgage Agreement, Paragraph 5. The mortgage[7] and Regulatory Agreement[8] broadly define the meaning of such property. I conclude that the property which defendant was ordered to turn over to the receiver comes within that definition.

---

7. The property described in the mortgage includes the real property

[t]ogether with the privileges and appurtenances to the same belonging, and all of the rents, issues, and profits which may arise or be had therefrom; and . . . [a]ll articles or personal property now or hereafter attached to or used in and about the building or buildings now erected or hereafter to be erected on the lands herein described which are necessary to the complete and comfortable use and occupancy of such building or buildings . . . including all goods and chattels and personal property as are ever used or furnished in operating a building or the activities conducted therein . . . .

Complaint, Exhibit B, pp. 1–2.

8. Paragraph 10(d) of the Regulatory Agreement, authorizes "the appointment of a receiver to take over and operate the project in accordance with the terms of the Agreement." The word "project" is defined in Paragraph 13(f) of the Agreement to include:

the mortgaged property and all its other assets of whatsoever nature or wheresoever situate, used in or owned by the business conducted on said mortgaged property, such business being the furnishing of housing and other such activities as are incidental thereto.

Even if the mortgage provision appointing a receiver alone is not controlling, the Court's Order appointing the receiver and delineating his duties necessarily incorporates the same definition of "property" as used in the mortgage. Thus, under either theory, non-interference with the Court's appointment of a receiver would mandate compliance with Paragraph 4 of the Order of July 30, 1976.[9]

Finally, defendant maintains in the alternative that should the Court deny defendant's motion to vacate the Order appointing a receiver, such receiver should be ordered to retain the current management. I decline to take such action since this would unduly interfere with the functions of the receiver. Whether new management is or is not necessary in the present case shall be determined by the receiver.

The receiver's motion for appointment of counsel is also denied at this time. Such denial, however, does not preclude the receiver from renewing this motion at a later time.

Defendant's motion to instruct the receiver to make all reports to the Court in writing and to serve copies of all such reports on all parties at the same time and further to instruct the receiver not to make informal reports on his operation as receiver to either party or their counsel unilaterally is denied. Such instructions would needlessly complicate the receiver's efficient management of the property and prevent the free flow of information between all parties concerned.

The Court reserves judgment on the issue of who should pay for the costs of the receivership pending the outcome of the forfeiture suit.

---

**9.** On the basis of the affidavit of Mr. Max Kargman, dated November 22, 1976, the Court believes that the defendant has not intentionally violated the Order of July 30, since by agreement between the receiver and the defendant such action was apparently not to be taken by the defendant until so requested by the receiver. According to Mr. Kargman such request has not been made since this agreement.