Leticia Sanchez HERNANDEZ and San Juana Rodriguez, Plaintiffs,

v.

Richard CASILLAS, District Director of the Immigration and Naturalization Service; and Leonel Castillo, Commissioner of the Immigration and Naturalization Service, Defendants.

Civ. A. No. L–78–42.

United States District Court,
S. D. Texas,
Laredo Division.

April 10, 1981.

Laredo Legal Aid Society, Inc., Lee Teran, Laredo, Tex., Peter A. Schey, Legal Services Aliens Rights Project, Los Angeles, Cal., for plaintiffs.

Jose A. Berlanga, Asst. U. S. Atty., Houston, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KAZEN, District Judge.

This action challenges a certain procedure used by immigration inspectors at ports of entry within INS District Number 14.[1] The Plaintiffs contend that the procedure whereby these inspectors solicit and obtain waivers of exclusion hearings conflicts with the Immigration and Nationality Act, the Code of Federal Regulations and the fifth amendment to the United States Constitution. By Order dated October 24, 1980, this Court certified a class and dismissed the claim concerning the voluntariness of individual waivers for failure to exhaust administrative remedies. A non-jury trial was duly held on February 24, 1981. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, this Court now enters the following findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

### Findings of Fact

1. Plaintiff Leticia Sanchez Hernandez and the class that she represents were permanent resident aliens of the United States who temporarily left this country and then sought readmission into the United States at ports of entry in INS District 14. Immigration inspectors at these ports challenged their right to re-entry for various reasons, usually based on the length of their absence. Whereupon, the class members all executed waivers of their right to an exclusion hearing before an immigration judge and surrendered their alien registration card (Form I–151).

2. The Immigration and Naturalization Service (INS) admits that waivers of exclusion hearings are routinely taken from entering aliens by immigration inspectors.

3. All aliens seeking admission to the United States at the ports of entry in INS District 14 are subjected to the same initial interrogation procedure.

4. Interrogation is uniformly a two-step procedure. The first step is a routine primary inspection by whichever federal officer is on primary duty at the time. If after primary inspection there still remains a question as to the alien's admissibility into the United States, then a secondary inspection is undertaken. The secondary inspection is conducted by an immigration inspector. The inspector will either permit the alien to enter the United States or if he

---

1. INS District No. 14 includes the following ports of entry: Amistad Dam, Texas, Corpus Christi, Texas, Del Rio, Texas, Eagle Pass, Texas, and Laredo, Texas. 8 C.F.R. § 100.4 (1980). The district headquarters is located in San Antonio, Texas.

concludes that the alien should not be admitted, explain to the alien his or her right to an exclusion hearing and set the hearing if requested. At the secondary inspection, the inspectors will generally take a sworn statement on an I–215W form. Although the initial statement will usually be taken in Spanish, it will be written entirely in English by the inspector. The statement will then be explained in Spanish to the alien. As a general rule, an immigration inspector will offer the alien a choice of waiving the hearing and obtaining a temporary crossing card or of returning to Mexico until an immigration judge is available for a hearing. It takes an immigration inspector the same amount of time to prepare a waiver form as it does to prepare a form referring the matter for a hearing before an immigration judge.

5. Although a later hearing is available after waiver merely upon a new presentment at the bridge, this fact is not explained to the alien at the time that the waiver is obtained.

6. Waivers are solicited and obtained because the INS believes that a hearing is only necessary when there is disagreement between the inspector and the alien as to admissibility. If the inspector and the alien disagree, the INS concedes that the disagreement must be resolved by an immigration judge. On the other hand, the INS argues that, if an alien agrees with the inspector's opinion that he is excludable, it is useless and wasteful to refer the case to an immigration judge.

7. In 1980, approximately sixty-one thousand persons were excluded at the Laredo, Texas Port of Entry. Of these, however, only about three hundred were resident aliens applying for entry after a period of absence from the United States. The vast majority of this latter group waived their right to a hearing even though many were aliens who had previously resided legally in the United States for a substantial period of time.

8. No full-time immigration judge is assigned to the Laredo Port of Entry nor to the other ports in District 14. Immigration judges travel to Laredo from San Antonio and hold hearings approximately once every ten to fourteen days. In areas that maintain a full-time immigration judge (e. g. El Paso), immediate exclusion hearings are available. At other ports of entry, in time of need, the INS has used Assistant United States Attorneys as temporary immigration judges. This practice, however, has apparently not been followed in District 14.

9. If an alien is referred for an exclusion hearing before an immigration judge, he or she is usually confronted with three options. First, the immigration judge may allow the alien to withdraw his or her application for admission. This procedure is similar to a waiver of a hearing and no exclusion order is entered. Second, the judge can hold a hearing and allow the alien to enter the United States. Third, the immigration judge can hold a hearing and enter an order of exclusion. If an exclusion order is entered, the alien may not reapply for admission to the United States for at least one year. See 8 U.S.C. § 1182(a)(16) (1976).

10. An immigration judge can clearly take a waiver of an alien's right to an exclusion hearing.

11. Under current practice, if an alien is served with notice of an exclusion hearing and the alien does not appear at the designated time and place, an exclusion order is not automatically entered. In such a case, the immigration judge will generally send the applicant a letter stating that no hearing will be held unless the applicant contacts the judge. At that point, the judge closes the case but does not enter an order of exclusion.

12. The use of waivers is more prevalent at the Laredo Port of Entry than in other border areas. If a full-time immigration judge were stationed in Laredo, the INS would literally follow the statute and refer all potentially excludable applicants for a hearing before the judge.

13. All findings of fact contained in this Court's Order of October 24, 1980, are adopted and incorporated herein for purposes of this opinion.

## Conclusions of Law

■ This case is one of first impression. Simply stated, the question before the Court is whether the applicable statutory scheme allows an immigration inspector to solicit and obtain waivers of exclusion hearings from entering aliens. Any alien seeking entry into the United States is subject to inspection by immigration officers. 8 U.S.C. § 1225(a) (1976). The powers of an immigration officer are specifically delineated by statute and regulation. An immigration officer has the "power to administer oaths and to take and consider evidence of or from any person touching the privilege of any alien or person he believes or suspects to be an alien to enter, re-enter, pass through, or reside in the United States...." *Id.* If the entering alien does not appear to the immigration officer to be "clearly and beyond a doubt entitled to land", the statute provides that "he shall be detained for further inquiry to be conducted by a special inquiry officer." *Id.* § 1225(b). The term "special inquiry officer" is synonymous with the term "immigration judge". 8 C.F.R. § 1.1(1) (1980). If the examining officer does decide to detain an alien for an exclusion hearing, the regulations mandate that "he shall immediately sign and deliver to the alien a Notice to Alien Detained for Hearing by an Immigration Judge (Form I–122)." *Id.* § 235.6. The I–122 Form, which is printed entirely in the English language, essentially informs the alien of the possible grounds for his or her exclusion, sets a time for a hearing and, if a hearing date is not readily available, provides a blank for the detainee's address so that subsequent notice may be forwarded. An immigration officer has no authority to make a final determination of excludability. Rather, that power is vested exclusively in the immigration judge. *See* 8 U.S.C. § 1226(a) (1976); *see generally* 1A C. Gordon and H. Rosenfield, *Immigration Law and Procedure* § 3.17d (rev. ed. 1980).

■ The Immigration and Naturalization Service ("INS") takes the position that a hearing before an immigration judge is only necessary when there is disagreement between the inspector and the prospective entrant as to admissibility. If the alien agrees that he does not want a hearing, the INS argues that there is then no need to give him one. This Court has no quarrel with the proposition that an entering applicant can waive his or her statutory right to an exclusion hearing. *See Mosley v. St. Louis Southwestern Railway*, 634 F.2d 942, 946 n.5 (5th Cir. 1981); *National Steel & Shipbuilding Co. v. Director, Office of Workers' Compensation Programs*, 616 F.2d 420, 422 (9th Cir. 1980); *Phillips v. Neil*, 452 F.2d 337, 349 (6th Cir. 1971), *cert. denied*, 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972); *Bonner v. B–W Utilities, Inc.*, 452 F.Supp. 1295, 1303 (W.D.La.1978); *American Consumer, Inc. v. United States Postal Service*, 427 F.Supp. 589, 591 (E.D.Pa.1977); *United States v. Mountain Village Co.*, 424 F.Supp. 822, 825 (D.Mass.1976). The question, however, is before whom such a waiver should be taken.

■ While one can clearly waive his or her right to an exclusion hearing before an immigration judge, there is no express authorization for an immigration inspector to take such a waiver. The INS counters that according to the "Immigrant Inspector's Handbook", an immigration inspector has discretion to allow an alien to withdraw his application for admission, provided that he is able and willing to depart from the United States. INS argues that withdrawal is essentially the same as waiver of a hearing and thus the present procedure is acceptable. While it is true that the procedures are similar, it is also true that neither procedure is contemplated by the literal language of the statute and regulations. The statute states that every alien who may not appear to the examining immigration officer at the port of arrival "to be clearly and beyond a doubt entitled to land *shall* be detained for further inquiry to be conducted by a special inquiry officer." 8 U.S.C. § 1225(b) (1976) (emphasis added). A special inquiry officer (immigration judge), as distinguished from an inspector, on the other hand, is fully empowered to allow an alien to withdraw his or her application for

admission. *In re Lepofsky*, 14 I.N. 718, 719 (B.I.A.1974). In that event, however, the withdrawal would be done on the record, as the applicable regulations require that an exclusion hearing be recorded verbatim. 8 C.F.R. § 236.3(e) (1980).

While the United States Supreme Court has not yet authoritatively decided whether the same waiver standard applies in civil cases as in criminal cases, the lower federal courts have universally applied the same standard. *See, e. g., Gonzalez v. County of Hidalgo, Texas*, 489 F.2d 1043, 1046 (5th Cir. 1973); *American Consumer, Inc. v. United States Postal Service*, 427 F.Supp. 589, 591 (E.D.Pa.1977). Thus, in order to waive a right, there must be an intentional relinquishment of a known right or privilege. *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). In its earlier Order, this Court analogized the current waiver practice of the INS to the line of cases involving cognovit notes. Those cases hold that, even in the context of a clear waiver of notice and opportunity to be heard, there must be a *judicial determination* as to whether the waiver was voluntary before judgment can be entered. *See Virgin Islands National Bank v. Tropical Ventures, Inc.*, 358 F.Supp. 1203, 1205 (D.V.I.1973); *Osmond v. Spence*, 359 F.Supp. 124, 127 (D.Del.1972); *Scott v. Danaher*, 343 F.Supp. 1272, 1278 (N.D.Ill.1972); *but see Tunheim v. Bowman*, 366 F.Supp. 1392, 1394 (D.Nev.1973). The vice of the instant practice, however, is that there is no ready mechanism for reviewing whether or not these frequent and repeated waivers of valuable rights are being given knowingly and voluntarily. A literal interpretation of 8 U.S.C. § 1225(b), requiring waiver to be taken only by a judge, thus seems warranted in view of the strong presumption against waiver of rights and the fact that the ultimate propriety of any waiver depends on the totality of the circumstances. *Mosley v. St. Louis Southwestern Railway*, 634 F.2d 942, 946 n.5 (5th Cir. 1981); *Gonzalez v. County of Hidalgo, Texas*, 489 F.2d at 1046 (presumption against waiver); *Hatch-er v. United States*, 352 F.2d 364, 365 (D.C. Cir.1965) (per curiam) (same holding); *Shiflett v. Commonwealth of Virginia*, 447 F.2d 50, 53 (4th Cir. 1971) (en banc) (no waiver unless party is fully informed), *cert. denied sub nom. Love v. Virginia*, 405 U.S. 994, 92 S.Ct. 1267, 31 L.Ed.2d 462 (1972); *United States v. White*, 429 F.Supp. 1245, 1251 (N.D.Miss.1977) (presumption against waiver); *United States v. Mountain Village Co.*, 424 F.Supp. at 825 (validity of any waiver depends upon the facts of a particular case); *Garner v. Tri-State Development Co.*, 382 F.Supp. 377, 380–81 (E.D.Mich. 1974) (presumption against waiver).

Evidence of the results of the waiver procedure employed by the INS further militates against the view that Congress intended to allow immigration inspectors to solicit and obtain waivers. While this Court is not suggesting any impropriety by immigration inspectors, the procedure is fraught with the potential for involuntary loss of valuable rights. An alien attempting to enter the United States is confronted by a uniformed inspector. The alien is explained his rights in Spanish and an oral statement is taken, presumably in Spanish. The alien is then required to sign the statement in English while the inspector translates. Under the current procedure, there is no way to fully determine that the alien has, in fact, understood his or her rights and that that person has intentionally relinquished a known right or privilege. According to the evidence, the alien suspected of excludability by the inspector is confronted with a Hobson's choice. If he signs a waiver of his right to a hearing and surrenders his I–151 card, he will then be allowed to enter the United States for a temporary visit. If he asks for a hearing, however, his I–151 card will still be seized, but he will then be sent back to Mexico to await a hearing sometime in the indefinite future. If he signs the waiver, there is no post-waiver judicial hearing to test the voluntariness of that action. A hearing in open court with a transcribed record is short-circuited. The Court repeats again its recognition of the proposition that all rights

394

can be waived. Indeed, under criminal procedures, a defendant can validly waive even the most fundamental rights, such as the right to plead not guilty, to trial by jury, to decline to incriminate himself, to be represented by counsel, etc. Yet no one would seriously argue that any such waivers could be finally given to the arresting officer and that the accused could then be summarily convicted on the spot without appearing before a court.

■ The fact that a later hearing is available for any alien who signs a waiver upon later presentment at the bridge does not sanitize the waiver procedure.[2] In the first place, the availability of a later hearing does not mitigate the fact that the alien may have been deprived of his or her statutory right to enter the United States for some length of time. *Cf. Scott v. Danaher*, 343 F.Supp. 1272, 1275 (N.D.Ill.1972) (fact that a judgment may be reopened and property returned to a debtor does not mitigate against the fact that the debtor was precluded from the use of his property for some length of time). Second, the aliens are not generally advised of the availability of a later hearing. Obviously, one is not likely to seek a remedy of which he or she has no knowledge.[3] Third, and most important, there is no guarantee that at any later hearing the immigration judge will determine the issue of excludability as of the date of the original attempted entry. Thus, the INS would be free to argue that the time period between the initial and later attempted entries was itself an independent basis of excludability, at least with regard to the returning permanent resident alien.[4]

■ In support of the present waiver procedure, the INS argues that it lacks the funds to hire more immigration judges, admitting that if it had more judges, there would be no particular reason to avoid the statutory scheme. This financial burden does not justify ignoring a congressional enactment. If the Congress refuses to appropriate enough funds to enable INS to follow the law, then the Congress has the power to amend that law and enlarge the powers and duties of immigration inspectors.

Having determined that the solicitation and obtaining of waivers by immigration inspectors is contrary to law, the Court will order that the INS cease such practices in District 14. As to all aliens who have at any time on or after July 7, 1976 held I–151 alien registration receipt cards, who were denied entry for an alleged abandonment of residential status, and who thereafter executed affidavits of relinquishment of their resident status, the INS will be directed to identify and notify these individuals of their right to a hearing. The excludability of the class members shall be determined from the time that the alien originally attempted to enter the United States and signed the illegal waiver.

To the extent any of the foregoing findings of fact are conclusions of law they are deemed as such. To the extent that any of the foregoing conclusions of law are findings of fact, they are deemed as such.

---

2. The law is settled that an applicant may obtain an exclusion hearing merely by making a new application for admission. *In re Rangel-Cantu*, 12 I.N. 73, 74 (B.I.A.1967). Obviously, presenting oneself at the international bridge or any port of entry would constitute such an application for admission.

3. Even if this Court were to impose a *Miranda*-type requirement upon immigration inspectors to advise the applicant of the availability of a later hearing, the procedure would still be infirm for the other two reasons.

4. While at least one immigration judge evaluates admissibility at the date of the original attempted entry, *see In re Hinojosa*, No. A12–207–599 (Feb. 8, 1979) (unpublished decision), there is no evidence that this is a uniform policy.